THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN GILBERT HARBARUGH, Defendant-Appellant.

First District (1st Division)    No. 61957

Opinion filed July 6, 1976.

James R. Streicker and Victoria J. Meyers, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, David A. Novoselsky, and Patrick W. O'Brien, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Defendant, John Gilbert Harbarugh, was charged in a two-count indictment with theft in violation of section 16—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1971, ch. 38, par. 16—1). Specifically, the first count charged him with stealing from Linda Tuman a stereo set exceeding $150 in value. The second count charged defendant with the theft of a 1967 Ford automobile valued at more than $150 which was registered to Linda's mother, Anita Tuman.

After a bench trial, defendant was acquitted on the first count, but convicted on the second. He was sentenced to the Illinois State Penitentiary for one to three years and taxed $97 costs pursuant to section 13 of division XIV of the Criminal Code of 1874 (Ill. Rev. Stat. 1973, ch. 38, par. 180—3). Defendant appeals and raises four issues: (1) whether it was plain error for the court to admit testimony as to the names on the title of the automobile, where the document itself was not introduced into evidence; (2) whether the State failed to prove beyond a reasonable doubt that defendant knowingly exercised unauthorized control over the automobile alleged to have been stolen; (3) whether the trial court improperly restricted defense counsel's inquiry pertaining to past representations made by the State's witness, Linda Tuman, regarding the nature of her relationship with defendant; and (4) whether the Illinois cost statute (Ill. Rev. Stat. 1973, ch. 38, par. 180—3) is void on its face and unconstitutional in its application.

We affirm the judgment of the trial court.

At trial, the State's witness, Linda Tuman, testified that she met defendant, John Gilbert Harbarugh, in October or November, 1972, when she was hitchhiking home to Skokie, Illinois, from the University of Oklahoma. Defendant picked her up in Springfield, Missouri, and drove her the remaining distance. Subsequently, she saw him again at Thanksgiving and later on several separate occasions. During this period she entrusted a 1967 Ford automobile to him so that he could fix its transmission. Although Linda Tuman was the primary user of the car, the title to this automobile was in her mother, Anita Tuman.

Linda Tuman testified that on December 6, 1972, defendant came to her home at approximately 11 a.m. and told her he wanted to sell the automobile. She showed him the title and told him that he would have to wait until her mother returned. She never gave him permission to take the title. He left, but came back at 6 p.m. Since Linda Tuman was entertaining dinner guests at that time, he left again and returned at 11:30 p.m. At that time defendant announced that he was taking her stereo in order to complete a trade for a 1957 Chevrolet. She warned him that if he did, she would call the police. At that time he threatened to kill her and her parents if she reported him. He then took the stereo and left.

Some time later Miss Tuman's mother, Anita Tuman, discovered that the title to the automobile was missing and that both the car and the stereo had been traded to Gilberto Moreno for a 1957 Chevrolet.

Linda Tuman met with defendant on several occasions following this incident in an effort to secure the return of the automobile and her stereo set. These meetings included a three-day period during which Miss Tuman stayed with defendant's sister. During these meetings, defendant alternately promised and then refused to secure the return of the stereo set and the automobile. Neither the car nor the stereo equipment was returned by defendant. On December 27, 1972, both Linda Tuman and her mother signed separate complaints against defendant for the theft of the stereo set and the automobile. Defendant was subsequently arrested and the missing property was returned by the Evanston police, who recovered the car and the stereo set from Gilberto Moreno, an employee of a Mobil service station in Chicago.

On cross-examination, Miss Tuman testified that during her three-day stay with defendant's sister she talked on the phone with her parents and the police. She talked briefly about marrying defendant. When defense counsel asked her if she ever told her parents that she was in fact married to defendant, an objection by the State was sustained.

Linda Tuman's mother, Anita Tuman, testified that the Ford automobile which defendant traded to Gilberto Moreno was registered in her name. She discovered that the title to the automobile was missing on

December 9 or 10. She did not give defendant the title to the car, did not sign it and did not consent to the sale of the car. When the car was returned by the police, Gilberto Moreno gave to Anita Tuman the title to the automobile which had been issued to him by the Secretary of State. Neither the original nor a copy of Anita Tuman's title to the car was offered in evidence at trial.

Gilberto Moreno described the agreement which defendant made with him to trade a 1967 Ford automobile and a stereo system for Moreno's 1957 Chevrolet. He testified that defendant told him the Ford belonged to his (defendant's) wife. When defendant gave him the title to the automobile, the same name appeared on the face and back of the title, but he could not recall whether the name was Linda Tuman or Anita Tuman. He did remember that he had testified before the grand jury that Anita Tuman's name was on the title. He further stated that he had not recovered his 1957 Chevrolet, which he valued at approximately $800. On cross-examination, he testified that he never saw a woman identified as defendant's wife in the company of the defendant, either at the time the agreement was made or at any other time.

Daniel Mangas, a detective with the Evanston police department, was called by defendant as a witness. He stated that he had conducted an investigation after a stolen property report was filed with the Evanston police department by Mrs. Anita Tuman and Linda Tuman. By questioning defendant he was able to locate Linda Tuman's automobile and stereo equipment. He further stated that defendant told him he had traded the 1967 Ford and the stereo set to Gilberto Moreno and that defendant admitted signing the title to the 1967 Ford in order to transfer it to Moreno. Objection to a question whether Linda Tuman had ever told him she was married to defendant was sustained.

Larry Carter, a friend of defendant, testified that Linda Tuman had helped carry the stereo from the basement of her parents' home to her car on the night that both were traded to Moreno for his 1957 Chevrolet. Both he and Linda Tuman were present during the entire transaction. When asked if he had ever heard Linda Tuman mention that she was going to marry defendant, an objection by the State was sustained.

Larry's brother, Donald Carter, testified that he was with Linda Tuman and defendant when the trade with Moreno took place. On the night of the trade, defendant carried the stereo from the house by himself and Linda helped load the equipment into the car. He and defendant then drove the Ford to the Mobil station alone, followed by Linda Tuman in her father's Cadillac. He could recall two instances when Linda Tuman, defendant and Gilberto Moreno had been together.

Defendant testified in his own behalf that during the course of his relationship with Linda Tuman they had discussed marriage and had

undergone the necessary blood tests. Both Donald Carter and Linda Tuman were present when the automobiles were traded. Defendant could not recall whether Donald or Larry Carter had helped him pick up the stereo at Linda Tuman's house. Defendant stated that he did not sign the title for the Tuman's automobile. Linda Tuman had fully assented to the agreement which he made with Gilberto Moreno.

In rebuttal, the State called detective Mangas, who testified that on the day prior to the trial Larry Carter had told him that he didn't know where the stereo equipment was located in Linda Tuman's house, because he had remained in the car while defendant and Linda Tuman had loaded it. In addition, the witness stated that at the time he arrested defendant on December 27, 1972, defendant told him he signed the title to the Tuman's car prior to giving the title to Moreno.

Also called in rebuttal was Rose Peterson, who stated that she had dinner at Linda Tuman's house on December 6, 1972, and that defendant stopped by briefly and left without Linda. She testified that on a later occasion between December 6 and December 27 she went to defendant's mother's house and there saw defendant and Linda Tuman. She distinctly heard Linda tell defendant to return her stereo, although the conversation was generally unintelligible. Defendant's voice sounded angry and Linda Tuman was upset.The purpose of the visit had been to recover Linda Tuman's property.

Defendant contends that under the best evidence rule it was error to admit the testimony of Gilberto Moreno regarding the signatures appearing on the automobile title without introducing the title itself and that this was plain error of which, under Supreme Court Rule 615(a), this court should take cognizance despite the fact that no objection had been made below.

The testimony relied on as plain error is Moreno's statement that the name on the back of the title which defendant gave him " * * * matched with the front." Defendant argues that because defendant denied that he signed a name on the title, the introduction of Moreno's statement, rather than the introduction of the title itself, violated the best evidence rule and seriously prejudiced his credibility and defense that his trading of the car was authorized.

■■ In order to be noticed as plain error, the action complained of must have affected substantial rights and the evidence must be closely balanced. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) Our examination of the record shows that no substantial rights were affected and that defendant's guilt was clearly shown. Defendant's witness Officer Mangas, on cross-examination, testified that defendant stated to him that he (defendant) had signed the title, which was in the name of Anita Tuman, in order to hand the title to Moreno. This testimony in and of

itself prejudiced defendant's credibility and strongly corroborated Moreno's testimony. Its admission did not constitute plain error. Consequently, any claim of error in its admission was waived by failure of defendant to object to it. (*People v. Trefonas* (1956), 9 Ill. 2d 92, 136 N.E.2d 817; *People v. Ross* (1968), 41 Ill. 2d 445, 244 N.E.2d 608, *cert. denied*, 395 U.S. 920, 23 L. Ed. 2d 237, 89 S. Ct. 1771. Further, even if it constituted error, it was harmless when viewed against the overwhelming evidence against defendant. In a bench trial, the court is presumed to have relied only on proper evidence in reaching its conclusion. *People v. Pelegri* (1968), 39 Ill. 2d 568, 237 N.E.2d 453.

Defendant next argues that the State failed to prove beyond a reasonable doubt that he *knowingly* exercised unauthorized control over the automobile alleged to have been stolen. He contends that he reasonably believed his trade of Anita Tuman's 1967 Ford was authorized by Linda Tuman. To support this position, defendant relies upon his close relationship with Linda Tuman and the testimony of the Carter brothers.

While proof of the close relationship between defendant and Linda Tuman certainly helps to explain the Tumans' delay in reporting the theft to the Evanston police, we fail to see how it necessarily supports defendant's position that it renders Linda Tuman's testimony incredible.

She stated that on December 6, 1972, she showed defendant the title to the car, but specifically told him he could not sell it until her mother returned home. She never gave him permission to take the title. Several days later, Linda's mother discovered that the title was missing. It listed Anita Tuman, Linda's mother, as the owner of the automobile. According to Gilberto Moreno's testimony, defendant gave him the title at the same time he gave him the automobile. Further, Officer Mangas testified on rebuttal that at the time he arrested defendant on December 27, 1972, defendant told him that he signed the title to Anita Tuman's automobile before he gave it to Moreno.

Linda Tuman testified that she never saw Moreno's Chevrolet before the trade was completed. Furthermore, she stated that she did not meet Gilberto Moreno until the grand jury proceedings.

Defendant and Donald Carter directly contradicted these statements in their testimony by stating that Linda Tuman was present during the entire transaction. However, Gilberto Moreno testified that he never saw a woman identified as Mr. Harbarugh's wife at the time the deal was closed or at any other time. When Moreno was asked if he knew whether Linda Tuman was in the car with defendant at the time the original deal was made, he stated, "No, nobody was in the car, just him [defendant] and the other guy [presumably Larry or Donald Carter]." This testimony

contradicts defendant's statement that Linda Tuman accompanied him to the service station on the night of the trade. Further, it also directly contradicts defendant's testimony that Linda Tuman and Moreno talked at some length about the trade.

The testimony of Larry and Donald Carter is essentially inconsistent and is therefore of little evidentiary value. Larry Carter stated that he and defendant went to Linda Tuman's house on the night of her dinner party, where they picked up the title and a stereo which all three of them carried out to the car. From Linda's house he and defendant went directly to the service station to complete the trade with Gilberto Moreno. Donald Carter stated that he and defendant went to Linda's house to pick up a stereo, then with Linda following in another car the three of them went to the service station. Thus, each witness excluded the other as present at the exchange. Since, presumably, the purpose of the testimony of these witnesses was to establish Linda Tuman's presence at the trade, we find their inconsistency with respect to each other's presence significant. Further, we note that Larry Carter never testified that Linda accompanied him and defendant to the trade at the service station.

Defendant's own testimony was not entirely consistent with either of these versions. First, he could not recall whether the trade took place the night of Linda Tuman's dinner party (December 6, 1972) or the next night. Larry Carter testified that the trade definitely took place during Linda's dinner party in the late afternoon of December 6, 1972. According to defendant's testimony, Linda Tuman followed in her parents' car to the service station where the trade occurred. Rose Peterson, who was at the dinner party, testified that defendant came by to visit Linda Tuman for one-half hour. She stated that Linda did not leave the party with defendant. This is consistent with Linda's own testimony concerning the events of that night. She stated that defendant stopped by briefly, then left and returned later, after her party had ended.

Although defendant has argued strenuously that Linda Tuman's testimony is incredible, we find the contrary to be true. Her testimony was strongly supported by Gilberto Moreno, who corroborated her statement that she was not present during any phase of the transaction. In addition, Anita Tuman, Linda's mother, unequivocally testified that the title to the car was in her name and that she did not give the title to defendant, sign it or consent to the sale of her car. Officer Mangas, when called by the State as a rebuttal witness, testified, without objection, that defendant acknowledged to him that he had signed the title prior to turning it over to Moreno.

■■ In a bench trial, the credibility of witnesses is for the trial judge to

determine and this court will not reverse unless the evidence is so improbable or unsatisfactory as to create a reasonable doubt of guilt. (*People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733.) The evidence here was sufficient for the trial court to find that defendant knowingly exercised unauthorized control over the 1967 Ford automobile. On the record here, we do not find that the trial court's determination was erroneous. Defendant was proved guilty beyond a reasonable doubt.

■■ Defendant next contends that the trial court improperly restricted defense counsel's inquiry as to the nature of defendant's relationship with Linda Tuman. This matter, however, is not before this court because it was not raised below by motion for a new trial. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856; *People v. Craig* (1966), 75 Ill. App. 2d 29, 221 N.E.2d 86.) Nor does it constitute plain error. Therefore, any error was waived.

■■ Finally, defendant argues that the taxing of $97 costs against him was improper and should be vacated because the cost statute (Ill. Rev. Stat. 1973, ch. 38, par. 180—3) is void on its face and unconstitutional in its application. This contention was not raised below: defendant made no motion to retax costs or to set aside the order taxing costs. Consequently, it cannot be raised for the first time on appeal. The question of the constitutionality of a statute is properly preserved for review only when it has been raised in and passed upon by the trial court. *People v. Luckey* (1969), 42 Ill. 2d 115, 245 N.E.2d 769, *cert. denied*, 397 U.S. 942; *People v. Orr* (1956), 10 Ill. 2d 95, 139 N.E.2d 212, *cert. denied*, 353 U.S. 987, 1 L. Ed. 2d 1145, 77 S. Ct. 1290, 358 U.S. 869, 3 L. Ed. 2d 101, 79 S. Ct. 102, *reh. denied*, 358 U.S. 913, 3 L. Ed. 2d 234, 79 S. Ct. 239.

Judgment affirmed.

BURKE and SIMON, JJ., concur.