THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
HAROLD SCHUBMEHL, Defendant-Appellant.

First District (1st Division)   No. 61354

Opinion filed December 27, 1976.

Rick Halprin and John Goldberg, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Renee G. Goldfarb, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:
Defendant, Harold Schubmehl, was found guilty after a bench trial of

the offense of burglary (Ill. Rev. Stat. 1969, ch. 38, par. 19—1) and was sentenced to a term of two to six years. Defendant appeals, contending that the trial court erred in admitting certain evidence, in failing to give appropriate weight to certain defense testimony, in restricting the cross-examination of the complaining witness and in restricting the direct examination of a defense witness.

The complaining witness, Chicago Police Officer James Schiffer, testified that on June 22, 1971, at approximately 10 a.m., he was in the basement of his home at 2946 South Lyman Street. He had gone there to do some cleaning after locking the doors to the house. He heard the floor above him creak as if someone was walking on the first floor. He went up to the first floor and heard a rummaging noise coming from his bedroom. In his bedroom, which was well lit, he discovered a man (identified by him at the trial as the defendant) with his hands in the top dresser drawer, rummaging through the contents. When defendant saw Officer Schiffer, he bolted out the front door, which was later discovered to have pry marks. Schiffer secured his service revolver from the top of the dresser and, in his stocking feet, chased defendant through an alley and several streets and saw defendant run into a house at 2963 South Bonfield. Officer Schiffer ran into the hallway of the house, just inside the open door, but did not go any farther because the house was dark, he could not see anybody and he didn't know in which room defendant was. He backed out, asked the woman next door to call the police and waited for the arrival of Officers Taylor and Bikowski in uniform. They went to 2963 South Bonfield, forced open the door, which had been locked in the meantime, entered the house and split up to search the rooms. There were two women and a child present at this time.

Officer Schiffer went into the rear bedroom and found defendant hiding on the floor under a bed. The other police officers got defendant out from under the bed and found two revolvers under the bed, a foot or two from defendant. Defendant was wearing the same clothes as when Officer Schiffer first saw him. A screwdriver and chisel were later found on the sidewalk in front of Officer Schiffer's home.

Police Officers Taylor and Bikowski corroborated Officer Schiffer.

As a boy, Officer Schiffer had been at the house at 2963 South Bonfield several times when a friend, William Hernacki, had lived there. He did not know who lived at that address on June 22, 1971. He had never seen defendant before that date. He did not know defendant's family or whether defendant had any sisters.

Defendant's sister, Maralyn Bartucci, testified that on June 22, 1971, defendant was at 2963 South Bonfield between 8 a.m. and 11 a.m. and was sleeping on his mother's bed in her bedroom. She admitted that she did

not actually see him until the police took him away. She said that on that date at about 10:30 a.m. Schiffer, waving a gun, came into the house and screamed at her, "Where did he go, which way did he go, where is he?" She became frightened, screamed and Schiffer left. She said that she had met Schiffer once or twice about eight years ago, but didn't recognize him when he burst in. She also testified that although Schiffer and she had screamed loudly, defendant did not get up until he was arrested and never asked what the yelling was about. She said he was a heavy sleeper, yet admitted that on that morning she had ordered her sister, Marcella, to turn down the radio because defendant was sleeping. She also testified that after Schiffer had left, she bolted the door and tried to call her mother and another brother on the phone. She did not wake up the defendant to tell him what had happened. Schiffer and other police officers returned in a few minutes, broke through the front door, searched the house and found defendant.

Defendant's sister, Marcella Schubmehl, testified that she was home between 9 a.m. and 12 noon on June 22, 1971, and that her sister (Maralyn Bartucci), her niece and the defendant were there when the incident occurred. She said that defendant was there between 8:30 and 12 noon. Between 10 and 11 a.m., she heard someone screaming in the alley about the police and that someone had just robbed his house. Looking out of a kitchen window, she saw someone running back and forth through the alley. She then went back to the front room to watch television with her sister. While there, she heard the same person shouting out front about police and the robbery of a house. Almost immediately, a man she did not know (but later identified as Schiffer) came through the door, gun in hand, shouting, "Where is he, where is he?" He screamed again and again, but defendant did not get out of bed to see what the noise was all about. Her sister told Schiffer to get out. After he left, she (Marcella) locked the door. Although they were terrified, they did not call the police. About five minutes later the police broke in the door and searched the house. When she went into her mother's bedroom, where she knew defendant was, the police were holding him.

Defendant's mother testified that the bottom of the mattress of the double bed in her bedroom was 5½ or 6½ inches from the floor, but she was not sure. The mattress sat on top of the wooden bedboard, which was not nailed or glued to the floor.

Annette LaPapa, another sister of the defendant, testified that she had known James Schiffer about eight or nine years prior to March 21, 1974. She stated that she had seen Schiffer quite often during the summer of 1966 at parties in the basement of 2963 South Bonfield, where she and her family, including the defendant, had lived at that time. She further

testified that the parties went on every Saturday night, that the defendant was present acting as a chaperone, and that during the summer of 1966 Schiffer saw the defendant in the basement of 2963 South Bonfield.

■■ Defendant contends that the trial court committed reversible error because it admitted into evidence the two guns found under the bed with defendant and that it must be presumed that the court considered them in determining that defendant was guilty. We disagree.

Even if the guns had not been admitted, the evidence proved defendant guilty of burglary beyond a reasonable doubt. "A person commits burglary when without authority he knowingly enters * * * a building * * * with intent to commit therein a felony or theft." (Ill. Rev. Stat. 1969, ch. 38, par. 19—1.) Officer Schiffer positively identified defendant as the man he discovered in Schiffer's locked house, rummaging through a dresser drawer. Pry marks were found on the front door. Defendant fled and, after a chase, was found hiding under a bed in his mother's home. This evidence alone was sufficient to find defendant guilty beyond a reasonable doubt. Even if the admission of the guns into evidence was error, we are impelled "to declare beyond a reasonable doubt that the error did not contribute to the finding of guilty." (*People v. Smith* (1967), 38 Ill. 2d 13, 15, 230 N.E.2d 188, 190.) This case was tried without a jury; any error in the admission in evidence of the guns "was not so prejudicial to defendant that the error requires a reversal." *People v. Germany* (1963), 28 Ill. 2d 154, 157, 190 N.E.2d 713, 715.

■■ Defendant also contends that the trial court failed to give appropriate weight to the unrebutted testimony of defendant's sister, Annette LaPapa, that Officer Schiffer, despite his testimony that he did not know defendant prior to the incident, had been in the Schubmehl house in 1966, several years prior to defendant's arrest, to attend parties given in the basement and that Schiffer saw defendant, who was present as a chaperone. He claims that this testimony so destroyed Schiffer's credibility that, if it had been given its proper weight, the proof was insufficient to prove defendant guilty beyond a reasonable doubt. This argument is without merit, because it presupposes that the trial court was required to find that the testimony of defendant's sister was credible and Schiffer's was not. It is hornbook law, however, that in a bench trial the credibility of the witnesses is for the trial judge to determine and this court will not reverse unless the evidence is so improbable or unsatisfactory as to create a reasonable doubt of guilt. (*People v. Harbarugh* (1976), 40 Ill. App. 3d 295, 352 N.E.2d 412.) The evidence here, to the contrary, proves defendant's guilt beyond a reasonable doubt.

Finally, defendant contends that the trial court committed reversible error in refusing to allow him, in order to affect Officer Schiffer's credibility, to cross-examine Officer Schiffer as to whether he had ever

attended parties in the basement of the home at 2963 South Bonfield; and that it also committed reversible error in refusing to allow him, in order to show Officer Schiffer's prejudice against defendant, to examine the defendant's sister, Annette LaPapa, as to whether she had seen Officer Schiffer arguing with defendant in 1966.

■■ These contentions have been waived because they were not included in defendant's written motion for a new trial. (Ill. Rev. Stat. 1975, ch. 38, par. 116—1; *People v. Landry* (1970), 123 Ill. App. 2d 86, 259 N.E.2d 604, *leave to appeal denied*, 44 Ill. 2d 585; *People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856, 857.) In addition, because the evidence is not closely balanced, they are not plain errors or defects affecting substantial rights which may be noticed although they were not brought to the attention of the court. (Ill. Rev. Stat. 1975, ch. 110A, par. 615(a).) But even considered on their merits, the excluded testimony would not have overcome the overwhelming evidence of defendant's guilt.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

GOLDBERG, P. J., and McGLOON, J., concur.