THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GERALD WALKER, Defendant-Appellant.

First District (4th Division)    No. 62855

Opinion filed April 7, 1977.

738

James J. Doherty, Public Defender, of Chicago (Suzanne M. Xinos, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Iris E. Sholder, and Paul Benjamin Linton, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LINN delivered the opinion of the court:

Defendant, Gerald Walker, was indicted for the offense of burglary. (Ill. Rev. Stat. 1973, ch. 38, par. 19—1.) Following a bench trial, defendant was found guilty and was sentenced to the Department of Corrections for a term of one to seven years. On appeal, defendant contends that the indictment charging him with burglary was legally insufficient and that the State failed to prove him guilty beyond a reasonable doubt.

We affirm the trial court.

I

The indictment charged that on January 8, 1975, "he, without authority, knowingly entered into a building, to wit: store of Cavin Hudson with the intent to commit the crime of theft therein in violation of Chapter 38, Section 19—1, of the Illinois Revised Statutes 1973."

Defendant urges that the indictment was legally insufficient for the following reasons: (1) There was no allegation of ownership of the

premises burglarized as required in a prosecution for burglary; (2) The proper name of the store and its address were not included; and (3) Calvin Hudson's first name was misspelled as "Cavin." Defendant asserts that since the indictment was incomplete and inaccurate, he was not fully apprised of the charge against him, he was misled in the preparation of his defense, and he was exposed to a possible subsequent prosecution for the same crime in violation of his rights against double jeopardy. U.S. Const. amend. V; Ill. Const. 1970, art. I, § 10.

■■ In *People v. Gregory* (1974), 59 Ill. 2d 111, 114, 319 N.E.2d 483, 485, our Supreme Court stated:

> "While at one time it was necessary that an indictment for burglary identify the owner of the building concerned, if it was known, such an allegation of ownership is no longer required. [Citations.] We would point out that a majority did say in *People ex rel. Ledford v. Brantley*, 46 Ill. 2d 419, that an indictment's failure to allege the ownership of the burglarized premises will render an indictment fatally defective. While the indictment in *Ledford* provided no identification whatever of the 'dwelling' which was burglarized, that omission did not justify the statement that ownership must be alleged. The holding simply cannot be supported. It must be regarded as erroneous, and accordingly it is overruled."

Subsequent Illinois Appellate Court cases have followed the rule announced in *Gregory*. (*People v. Baker* (1975), 33 Ill. App. 3d 898, 338 N.E.2d 565; *People v. Reese* (1975), 29 Ill. App. 3d 568, 331 N.E.2d 316; *People v. Pruden* (1975), 25 Ill. 3d 47, 322 N.E.2d 501.) Consequently, we find no merit in defendant's contention that the indictment is fatally defective in its failure to allege ownership of the burglarized premises.

Defendant next argues that the exclusion from the indictment of the proper name (Hudson's Record and Wig Shop) and the address of the store renders the indictment fatally defective since Calvin Hudson could own more than one store. *People v. Pruden* (1975), 25 Ill. App. 3d 47, 322 N.E.2d 501, is dispositive of this issue. In *Pruden*, the court held that the identification of a burglarized building as "occupied by Williams Implement" sufficiently identified the premises, despite defendant's contention that "Williams Implement" could own both a residence and a commercial building. The court found that any doubt harbored by defendant could have been resolved by a simple oral inquiry. Further, the court held that the absence of a street address did not necessarily render the indictment defective, provided that defendant was otherwise sufficiently informed of the charges against him.

Defendant contends that the misspelling of Calvin Hudson's name as "Cavin" constitutes a fatal defect in the indictment. However, in *People v.*

*Gargano* (1973), 10 Ill. App. 3d 957, 295 N.E.2d 342, the court held that proof of the Christian name was unnecessary where the evidence adduced leaves no doubt as to the identity of the person involved.

The general rule applicable to any indictment governs an indictment for burglary. As noted by the court in *People v. Baker* (1975), 33 Ill. App. 3d 898, 899, 338 N.E.2d 565, 566:

> "An indictment's allegations must be set out with such specificity or particularity that the accused is informed of the offense with which he is charged and enabled to prepare his defense, and further that he is protected against being later prosecuted for the same crime. *People v. Gregory*, 59 Ill. 2d 111, 319 N.E.2d 483. See also, *People v. Pujoue*, 1975, 61 Ill. 2d 335, 355 N.E.2d 437."

■■ It is evident that the due process requirements set forth in *Baker* were satisfied in the instant indictment. Defendant was fully apprised of the charges against him. The indictment was sufficiently particular in its allegations of the surname of the proprietor, the fact that defendant had no authority to enter the burglarized building, the possession by defendant of the requisite intent to commit the offense with which he was charged, and further, the specific statute which defendant violated.

■■ Defendant's contention that the alleged deficiencies in the indictment would expose him to double jeopardy likewise is without merit. In the event of another prosecution, defendant has recourse to the entire record in this proceeding, including the complaint for preliminary examination, the arresting officer's report, and the bill of particulars, which included the trade name and address of the store. (See *People v. Ogden* (1970), 123 Ill. App. 2d 46, 259 N.E.2d 361; *People v. Collins* (1970), 123 Ill. App. 2d 138, 260 N.E.2d 30.) Further, we note that during hearing of the post-trial motions, the trial judge directed that the address, the owner, and the proper name of the store be added to the indictment. This being accomplished, a further safeguard from double jeopardy exists.

In view of the foregoing, we conclude that the indictment in the instant prosecution was legally sufficient.

## II

Defendant next urges that even if the indictment is legally sufficient, his conviction must be reversed since the State failed to prove him guilty beyond a reasonable doubt.

At trial, James Turner Jackson, the chief of security for the Lillyard Corporation, testified that at approximately 6 a.m., on January 8, 1975, he was awakened by a telephone call from the night security guard for the complex of commercial and residential properties located at 5828 W. Madison Street in Chicago. After receiving the call, Jackson peered out of

the bedroom window of his apartment, which was located two doors away from the buildings. He observed two men walking by. Jackson then left his apartment and proceeded down the back steps. As he did so, he observed a man coming out of the back of the record store owned by Calvin Hudson and located in the building complex. At that moment the man quickly turned and re-entered the record store. Jackson then went back upstairs to his apartment and again spoke to the night security guard.

Jackson then returned to the record shop and met the night security guard and two police officers. Twenty-five minutes later Calvin Hudson arrived. Although Jackson was uncertain whether it was at that time or the next day, he described to Hudson the man he had seen come out of Hudson's store the morning of January 8. Jackson did not know his name but had seen him in Hudson's store on numerous occasions. Jackson further stated that he gave the same information to burglary detectives about a week later. Jackson also said that on January 30, 1975, he saw defendant in the custody of two Chicago policemen and identified him as the man he saw on the morning of January 8, 1975.

On cross-examination, it was disclosed that Jackson was a trained security guard with approximately 12 years experience. While Jackson stated that he observed an individual carrying records on the morning of the burglary, he had stated at the preliminary hearing that the individual was merely carrying "something" in his hand. Jackson also admitted that immediately following the burglary, he did not tell the police officers what he had seen, nor did he ever initiate a call to the police. Jackson related the information concerning defendant about two weeks later to a police officer who had contacted him. Jackson further stated that he identified defendant on January 30, 1975, while defendant was sitting in a squad car with two policemen.

Police Investigator Robert Polerecky testified that on January 30, 1975, while riding in his squad car on Madison Street he was flagged down by Calvin Hudson. After talking to Hudson, he approached defendant, who was walking nearby. Polerecky had defendant go with him to where Hudson and Jackson were waiting. Jackson immediately identified defendant as the person he saw at the scene of the burglary on January 8, 1975.

Calvin Hudson, the proprietor of Hudson's Record and Wig Shop was called as the last witness for the prosecution. Hudson stated that he lived in the rear of the shop. At 5:55 a.m., on January 8, 1975, he left his shop for a short period of time. When he returned at 6:45 a.m., the shop was in disarray. All of the records and wigs were missing.

Hudson further testified that shortly after the burglary, he saw Jackson and the police at his shop. Jackson did not volunteer any information in

connection with the incident. However, two days after the burglary Jackson described to him the man he saw leaving the store on the morning of January 8. From the description, Hudson knew who the suspect was, but only by his nickname, "Spider", and that he usually came to the store every day. Between the 8th and 30th of January, "Spider" did not come in. On January 30, Hudson saw him in the neighborhood. Shortly thereafter, Hudson stopped a passing squad car and asked the police to apprehend the suspect, who was identified as defendant.

On cross-examination, Hudson related that he was unsure of the date of his second conversation with Jackson, while on direct examination he had indicated that it took place on the 10th of January. Hudson also testified that he had never initiated any conversations with the police with regard to the incident, although the police had come to his shop to speak with him on an occasion when he was away from the store, but he later telephoned them. He did not recall the name of the officer he spoke to, but did tell him about "Spider."

Defendant called no witnesses on his behalf but obtained stipulations to the effect that if Officer Moore were called to testify, he would state that he arrived at 6:20 a.m. on January 8, 1975, and interviewed Johnnie Ward, the night security guard; and that if Officer Rosen were called to testify he would state that as of January 14, 1975, he had not found any witnesses to the burglary.

After closing arguments, the trial judge rejected defendant's argument concerning the legal insufficiency of the indictment, and found defendant guilty of burglary as charged.

The trial judge expressly stated the grounds for defendant's conviction as follows: "The case hinges upon the testimony of James Jackson and the question is whether or not James Jackson, in fact, saw the defendant, Gerald Walker, on the morning of January 8, 1975. It is my opinion that James Jackson told the truth and I believed him and based upon that, Gerald Walker is found guilty of burglary."

A trial judge, sitting without a jury, is in the best position to determine the weight and credibility to be afforded the testimony, and unless the determination is so unreasonable, improbable or unsatisfactory as to raise a reasonable doubt of guilt, the trial court's decision will not be disturbed on appeal. (*People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733; *People v. Owens* (1977), 45 Ill. App. 3d 1012, 360 N.E.2d 481; *People v. Harbarugh* (1976), 40 Ill. App. 3d 295, 352 N.E.2d 412.) Furthermore, the testimony of a single witness, if positive and credible, is sufficient to support a conviction. *People v. Jennings* (1976), 37 Ill. App. 3d 982, 347 N.E.2d 421.

Defendant argues that the conduct of Jackson beginning on the morning of the burglary and continuing through his identification of defendant three weeks later, renders Jackson's testimony unworthy of

belief. In particular, defendant points to Jackson's failure to describe defendant to the police or to Hudson on the morning of the incident and his subsequent failure to initiate any communications with the police or to tell them he had seen defendant a number of times before in Hudson's shop and that while not knowing him by name, he could readily recognize him. Defendant argues that, considering Jackson's training and experience as a security officer, his inaction is extraordinary and necessarily renders his later identification of the defendant highly suspect.

■■ Defendant also calls attention to the discrepancy between Jackson's testimony at the preliminary hearing when he stated he saw "something" in defendant's hands and at trial when he explicitly stated "L P Records." We note that the so-called irregularity of Jackson's conduct and the discrepancy in his testimony were brought to the attention of the trial judge who did consider these factors, but did not find them to detract so substantially from Jackson's credibility as to render his testimony unworthy of belief. (See *People v. Jennings* (1976), 37 Ill. App. 3d 982, 347 N.E.2d 421.) Again, this issue was a question to be determined by the trier of fact and we find no basis for disturbing that finding.

Lastly, defendant argues that Jackson could not have identified him on the morning of January 8, 1975, since at 6 a.m. on a winter's morning it is common knowledge that it is dark outside. While this may be true, no evidence was adduced at trial regarding the natural or artificial lighting conditions on the morning of the burglary. The trial judge determined the weight to be given Jackson's identification testimony based upon the questions put to the witness and his answers. The trial judge believed that Jackson saw defendant on the morning of the burglary. We will not disturb that conclusion.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

JOHNSON and ROMITI, JJ., concur.