STATE of Maine

v.

Thomas Jeffrey WING.

Supreme Judicial Court of Maine.

Argued Jan. 13, 1981.

Decided March 18, 1981.

Janet Mills, Dist. Atty., Kevin J. Regan, Asst. Dist. Atty. (orally), Auburn, for plaintiff.

Gaston M. Dumais (orally), Lewiston, for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS, ROBERTS and CARTER, JJ.

McKUSICK, Chief Justice.

Defendant Thomas Jeffrey Wing appeals from his Superior Court (Androscoggin County) convictions entered after a jury trial for burglary, 17–A M.R.S.A. § 401 (Supp.1980), and theft, *id.* § 353. Defendant asserts that his convictions should be reversed because the State failed to prove that the burglary occurred in the building alleged in the indictment and because the presiding justice erroneously refused to give a requested jury instruction concerning an absent witness. Finding no error in the Superior Court proceedings, we deny the appeal.

Defendant's convictions arose out of an incident which took place on the evening of June 10, 1979, on the premises of O'Connor's Pizza in Auburn. On that evening, a

break-in occurred in a shed that was located next to the restaurant building of O'Connor's Pizza and that was used to store the empty returnable beer and soda cans used at that business establishment. Several cases of empty cans were removed from the shed. An Auburn police officer who was present in the restaurant at the time of the incident apprehended defendant as he was running from the scene carrying a couple of cases of empty cans. Defendant was indicted on August 14, 1979, by a bill charging separate crimes of burglary and theft.

■ The first count of that indictment, charging defendant with burglary, alleged that on or about June 10, 1979, defendant

did enter a structure, namely a place of business known as O'Connor's Pizza, the property of Robert O'Connor, knowing that [he was] not licensed or privileged to do so and with the intent to commit theft therein.

The evidence at trial established that there were two structures on the premises of O'Connor's Pizza, namely, the main restaurant building and the storage shed where the burglary took place. After the State rested, defense counsel moved for a judgment of acquittal on the burglary charge on the ground that the State had not proved beyond a reasonable doubt that defendant had broken into and entered the structure referred to in the indictment, namely, in counsel's theory, the main restaurant building of O'Connor's Pizza. The presiding justice denied the motion. We hold that he did not err in doing so.

We conclude that the proof in the case at bar conformed to the tenor of the indictment. The phrase "a structure, namely a place of business known as O'Connor's Pizza, the property of Robert O'Connor" describes either the main restaurant building or the storage shed located adjacent to and

used with the restaurant. Each was plainly a "structure" within the meaning of 17–A M.R.S.A. § 401,[1] the burglary statute. *See id.* § 2(24).[2] Robert O'Connor, the proprietor of O'Connor's Pizza, testified that both buildings were indeed his property. He further testified that the storage shed was located adjacent to the main portion of the restaurant and that the two buildings were placed so close to each other that a person who tried to walk between them might rub his shoulders against both buildings at once. O'Connor also stated that he used the shed to store empty returnable beer and soda cans after the contents had been consumed by the patrons of his pizza restaurant. The shed was in every sense functionally a part of the restaurant. Each building, in short, was "a structure, namely a place of business known as O'Connor's Pizza, the property of Robert O'Connor."

However, even if we were to find the pleading and the proof at variance, that variance would not be fatal. We have previously held that an indictment is sufficient if

a respondent of reasonable and normal intelligence, would, by the language of the indictment, be adequately informed of the crime charged and the nature thereof in order to be able to defend and, if convicted, make use of the conviction as a basis of a plea of former jeopardy, should the occasion arise.

*State v. Charette,* 159 Me. 124, 127, 188 A.2d 898, 900 (1963). For the reasons already stated, the language of the indictment was sufficient to apprise defendant of the nature of the burglary offense with which he was charged. Particularly under the liberalized pleading requirements of M.R.Crim.P. 7(c), *see State v. St. Clair,* Me., 418 A.2d 184, 188 (1980), the fact that both the shed and the restaurant building could be characterized as "a structure, namely a

1. 17–A M.R.S.A. § 401(1) (Supp.1980) provides that:

A person is guilty of burglary if he enters or surreptitiously remains in a structure, knowing that he is not licensed or privileged to do so, with the intent to commit a crime therein.

2. 17–A M.R.S.A. § 2(24) (Supp.1980) provides in pertinent part that:

"Structure" means a building or other place designed to provide protection for persons or property against weather or intrusion . . . .

place of business known as O'Connor's Pizza, the property of Robert O'Connor," does not render the indictment so indefinite that it fails to inform defendant of the essential facts concerning the burglary charge, see *State v. Ball*, 432 S.W.2d 265, 266 (Mo. 1968);[3] see also *People v. Walker*, 47 Ill. App.3d 737, 738–739, 8 Ill.Dec. 190, 192, 365 N.E.2d 428, 430 (1977). Defendant could have resolved any pretrial uncertainties he may have had as to which structure was specified in the indictment by moving for a bill of particulars under M.R.Crim.P. 16(c)(2), see *State v. Ball, supra* at 266. His counsel elected not to exercise that option.

■ Furthermore, in the unlikely event that defendant is hereafter reindicted, the indictment in the case at bar, taken along with the evidence at trial as well as this opinion, see *State v. Damon*, Me., 395 A.2d 121, 122 (1978); *State v. Nappi*, Me., 369 A.2d 230, 232 (1977); *State v. Kimball*, Me., 359 A.2d 305, 307 (1976), will protect him by showing that he has already been tried and convicted of breaking and entering the storage shed. Those recent and well-considered decisions of the Law Court are fully supported by the opinions of the United States Supreme Court. That Court has consistently held that in a second prosecution the accused who asserts a defense of former jeopardy not only may rely on the record at large in the first case, *Russell v. United States*, 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1046–1047, 8 L.Ed.2d 240 (1962), but also may "resort to parol testimony to show the subject-matter of the former conviction," *Bartell v. United States*, 227 U.S. 427, 433, 33 S.Ct. 383, 384–385, 57 L.Ed. 583 (1913). See also *United States v. Haas*, 583 F.2d 216, 221 (5th Cir. 1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1788, 60 L.Ed.2d 240

(1979). This defendant is adequately protected from any danger of reprosecution for the same offense. While the better practice would indeed have been for the State to be as precise as possible in describing the structure that was broken into, no shortcoming in this indictment requires reversal of defendant's conviction thereon.

■ Defendant's second claim of error, by which he attacks both convictions, is also without merit. After the jury had retired and had deliberated for about an hour, the foreman requested the presiding justice to explain to the jury why one Richard Roy, who had been mentioned as a potential witness for the State during voir dire, had never taken the stand. Other witnesses had alluded to the fact that Mr. Roy had been present in the restaurant at the time of the June 10, 1979, incident, and had informed the restaurant owner and the Auburn police officer who was present at the time that a crime might be taking place. Defense counsel asked the justice to charge the jury that the absence of Mr. Roy from trial should give rise to an inference unfavorable to the State. The justice, however, declined to do so, and instead instructed the jury that they were to decide the case solely on the evidence presented. He thereby committed no error.

In the case at bar, the prosecutor told the presiding justice that he had mentioned Mr. Roy as one of his potential witnesses during voir dire because he hoped to be able to call him, but that Mr. Roy had been unavailable throughout trial. Moreover, there was no assertion at trial by defense counsel, nor is there any suggestion elsewhere in the record, that any testimony by Mr. Roy would have been other than merely cumulative of evidence already in the record. Indeed, de-

---

**3.** In *State v. Ball, supra*, the information charged that defendant broke and entered "a certain building, namely a building owned and occupied by the Emma Creamery Company, a Missouri corporation, located and situated in the City of Emma, Saline County, Missouri." *Id.* at 266. The evidence at trial showed that defendant forced open a door in the Emma Creamery office building and broke into a safe. On the defendant's post-trial motion to vacate his conviction on the ground that the informa-

tion was fatally defective, the parties stipulated that the Emma Creamery Company owned three buildings in the City of Emma, which at the time of the previous census had a population of only 202. The Missouri Supreme Court held that the existence of three separate Emma Creamery buildings had no bearing on whether defendant did or did not break and enter "the particular building mentioned in evidence under the information," *id.*, and affirmed the conviction.

fense counsel does not deny on appeal that the testimony of the restaurant owner and the police officer indicated that Mr. Roy's testimony would have been harmful to defendant. Where, as here, the missing witness was apparently equally unavailable to both the State and defendant and the record does not indicate that his testimony would have been detrimental to the State, the trial justice committed no error in declining to give the requested instruction. *See Craig v. State*, Ind., 404 N.E.2d 580, 583 (1980); *United States v. Williams*, 496 F.2d 378, 383 (1st Cir. 1974).

The entry must be:

Appeal denied.

Judgments of conviction affirmed.

WERNICK, GODFREY, NICHOLS and ROBERTS, JJ., concurring.

ROBERTS, J., with whom GODFREY, J., joins, writes separately in explanation of his concurrence.

CARTER, J., dissenting.

ROBERTS, Justice, concurring, with whom GODFREY, Justice, joins.

I join with the majority of the Court for three reasons, the last of which prompts me to write separately.

My first reason is that there is no variance between the indictment and the proof. Wing was charged with entry into a structure owned by Robert O'Connor. The additional allegation, "namely a place of business known as O'Connor's Pizza," did not necessarily narrow the scope of the indictment to only the principal structure used in that business. I reject the suggestion of Justice Carter that the indictment must contain a sufficient description to eliminate all other structures. Such a suggestion belies the promise of simplification inherent in the Supreme Judicial Court's adoption of

M.R.Crim.P. 7(c). See H. Glassman, *Maine Practice, Rules of Criminal Procedure* § 7.3 (1967).[1]

My second reason, and a point ultimately conceded by Justice Carter in his dissent, is that the record is devoid of any suggestion that the defendant was in any way surprised by the manner of proof or prejudiced in the preparation of his defense.

My third reason is that I find the indictment alone entirely adequate as of the moment jeopardy attached to protect the defendant from subsequent prosecution for an entry into either structure. In my view, the liberalization of pleading requirements under M.R.Crim.P. 7(c) also expands the scope of the constitutional protection against double jeopardy. These concepts are but two sides of the same coin—their parameters are identical. When we say as a matter of law that a description is sufficient to support a conviction for entry into *either* of two structures, then that description is also sufficient to prevent subsequent prosecution relative to *either* structure. Whenever the prosecution chooses to rely upon liberal pleading requirements then the prosecution must expect the scope of double jeopardy protection to be expanded. Even if Wing had been acquitted by a jury on the basis of instructions erroneously requiring proof of entry into the main restaurant building of O'Connor's Pizza, he could not again have been prosecuted for entry into the shed.

CARTER, Justice, dissenting.

I dissent from the views of the majority on the question of whether there is an impermissible variance in this case between the proof at trial and the charge set forth in the indictment. I otherwise concur in the majority opinion, but would reverse the judgment below because of my disagreement on this issue.

1. According to H. Glassman, *supra* at § 7.11, the Supreme Judicial Court

has recognized, to paraphrase Justice Holmes, that the Declaration of Rights, giving the defendant the right to demand the nature and cause of the accusation against him, does not fasten forever upon the State

of Maine "the inability of the seventeenth century common law to understand or accept a pleading that did not exclude every misinterpretation capable of occurring to intelligence fired with a desire to pervert."
(quoting *Paraiso v. United States*, 207 U.S. 368, 372, 28 S.Ct. 127, 129, 52 L.Ed. 249 (1907)).

## I.

I do not believe that we would place too great a burden upon an enlightened system of justice, or upon the state's prosecutors acting therein, to require the prosecutor, when he wishes to charge a citizen with the offense of burglary, to have sufficiently investigated his case to enable him to plainly and definitely identify *in the charging document* the structure claimed to have been the subject of the burglary in question. I take this to be most especially true when that system of justice, as does ours, utilizes generally "liberalized rules of criminal pleading" which otherwise release the prosecutor from the fetters of technical expression and grammatical and definitional nicety. "Liberalization" in pleading need not be stretched, however, to authorize the abandonment of all certainty, clarity, and precision of expression.

The bald fact here is that this defendant was charged with burglary of one building and was convicted by evidence at trial of a burglary of *another* building. The indictment charged the defendant with an unlawful entry into a building identified therein as "O'Connor's Pizza." The evidence established that there was a building so identified. The evidence also established that, notwithstanding the content of the indictment, the defendant did not break into that building. All the evidence at trial was unquestionably oriented with deliberation on the part of the prosecutor to proving that the defendant broke into *another* separate, distinct, and discretely identified building nearby to the first. It was never proven that defendant entered, illegally or otherwise, the building identified in the indictment. On the evidence presented at trial, a jury could only conclude that if defendant illegally entered any building, it was not the one charged by the indictment. By any view of the evidence, the building entered could not be found to be "O'Connor's Pizza." It was, rather, a separate building situated nearby to "O'Connor's Pizza." That building served only as a storage shed. It was not attached physically to the building described in the indictment; it was not a place where any business was transacted.

Neither pizza nor any other finished product nor any raw material therefor are sold from or found in that structure.

Yet the majority says "the shed was in every sense functionally a part of the restaurant [O'Connor's Pizza]." In fact, the evidence shows only that the shed was physically situated in close proximity to the restaurant building and that empty beverage containers resulting from the business activity carried on in the restaurant building were stored there pending redemption. Such evidence, I submit, does not show any "functional" connection of substance between the two buildings. It cannot reasonably be said that either building *is* the other. The buildings are physically separate. Whatever the functional relationship between the two structures, the shed is not the same structure as "O'Connor's Pizza." The entry into one is not, in any sense, an entry into the other. The performance of an only nominally related function (e. g. temporary storage of empty beverage containers) does not change the fact that the buildings are separate structural entities nor does it dissipate the significance of that fact. Where the proof at trial digresses from the charge on a foundational matter so intimately connected with the substance of the offense charged, that discrepancy cannot be considered a permissible variance.

To sanction a digression so easily avoided by the prosecutor in the first instance will generate litigation over an esoteric issue that this Court has needlessly created. Such a course of litigation over the coming decades can only result in the needless expenditure of always precious judicial resources in considering those cases, the intellectual perplexity of the trial bench and bar, the encouragement of slovenly prosecutorial pleading and at least occasional injustice.

Yet all of this is avoidable. No responsible prosecutor would undertake to defend this indictment, in the abstract, as the result of "good practice" nor could he succeed in the endeavor were it undertaken. This indictment can only be the result of hasty

and ill-considered drafting done without access to the facts necessary to charge a crime by plain and definite language. We should recognize it for what it is. The consequences of such a recognition will be less painful now than they will be after a hundred cases on the point.

We have a rare opportunity in this case, because on the issue presented by the indictment we write on a clean slate. We construe a provision of a relatively new Criminal Code, drafted as the result of arduous study for the purpose of clearing away the labyrinthine complexities of the common law definitions of criminality. The Code says very plainly that burglary is the unlicensed entry of a structure. 17–A M.R.S.A. § 401(1). It says a structure is "[a] building or other place designed to provide protection for persons or property against weather or intrusion." 17–A M.R.S.A. § 2(24). M.R.Crim.P. 7(c) states "The indictment or the information shall be a *plain*, concise and *definite* written statement of the essential facts constituting the offense charged" (emphasis added). The proper application of these straight-forward definitional rubrics can be easily accomplished by any prosecutor who will take the time to think on them and the facts of his case. That application requires some identification of the structures claimed to be the subject of the alleged burglary sufficient to distinguish them from other structures which the claim does not reach.

Why need we lay in this· clean field a fertile seed-bed of litigation about under what circumstances similarity of function renders two physically separate buildings into one? There is no basis in legislative intent for such a concept. The concept is a fiction, to begin with, and defeats the very purpose of the Code's specific and simple definitions. Further, there will be no need for such a concept if prosecutors understand that we will not enunciate one. Finally, enunciation of the concept will assure that prosecutors will not abjure its beneficial effects for them in the future. This Court will ultimately be driven by its own tortured logic to some day decree finally that a result so ludicrous as that in *State v. Ball*,

432 S.W.2d 265 (Mo.1968) (relied on by the majority) is compelled by the law of this state.

I fear that the encouragement given by the decision in the present case to prosecutorial lethargy in pleading will give the courts unnecessary work for many years. I would put the responsibility to plead so simple a fact as identification of the structure in burglary cases where it belongs, with confidence that prosecutors will rise successfully to the occasion thereby created.

## II.

In the absence of prejudicial error, the foregoing matters of judicial restraint and economy would not justify reversing the defendant's conviction. As the majority points out, the indictment must be sufficient both for purposes of informing the defendant of the crime charged and for protecting him from the danger of double jeopardy. I recognize that defendant has not shown that he was inadequately informed of the nature of the charges against him. The majority opinion, however, also effectively negates the constitutional right not to be placed twice in jeopardy for the same offense. Me.Const., art. I, § 8; U.S. Const., amend. V. That right, as secured by the Federal Constitution, is made applicable to state proceedings by the Due Process Clause of the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); *Gwinn v. Dean*, 613 F.2d 1 (1st Cir. 1980).

I do not believe that this indictment *tested at the constitutionally operative point in time* protects this defendant against the risk of double jeopardy in view of the variance between it and the proof at trial. This Court has said that jeopardy begins when the defendant is put on trial before a court of competent jurisdiction, upon an indictment sufficient in form and substance to sustain a conviction and the jury has been charged with his deliverance. *State v. Tise*, Me., 283 A.2d 666, 667 (1971); *State v. Slorah*, 118 Me. 203, 106 A. 768 (1919). If the guarantee against double jeopardy is to

have any generality of application, it is at that point in time that the sufficiency of the indictment must be judged. Otherwise, the right is secured only to those who assert the protection on appeal, and has no general application to *all* those persons who are, at one time or another, charged with crime.

Once a variance occurs at trial of the type involved here, it is clear that, if the indictment is read to encompass the proof that is at variance, the indictment cannot also be read *at the commencement of trial* as sufficient to guarantee against double jeopardy of the defendant. Here, the statute [17–A M.R.S.A. § 401(1)] makes it a crime to enter, other specified elements being satisfied, a structure. The indictment charges this defendant with such entry of *a structure*, which it identifies as "a place of business known as 'O'Connor's Pizza.'" The proof varies from the indictment by showing that the specified place of business is not a single structure, but is made up of *two structures.* Thus, the state under this indictment has the opportunity, *within the scope of the language of the indictment*, to convict the defendant by proving that he entered either of *two* structures. Regardless of which way the state proceeds with the proof on that fact, the defendant remains exposed to a second trial for entry of the other structure, an offense within the scope of the indictment in the first trial. The defendant is therefore, because of the ambiguity in that indictment, if it is treated as sufficient, exposed to the threat of a second trial *for the same offense.* The variance establishes with crystal clarity the defect in the indictment.

The majority, in saving this indictment, relies upon the proposition that the insufficiency of the indictment does not offend the guarantee against double jeopardy because:

[I]n the unlikely event that defendant is hereafter reindicted, the indictment in the case at bar, taken along with the evidence at trial as well as this opinion, *see State v. Damon*, Me., 395 A.2d 121, 122 (1978); *State v. Nappi*, Me., 369 A.2d 230, 232 (1977); *State v. Kimball*, Me., 359 A.2d 305, 307 (1976), will protect him

by showing that he has already been tried and convicted of breaking and entering the storage shed.

The *Damon, Nappi* and *Kimball* cases cited by the majority do express the proposition stated. In that respect, I believe they conflict with the decisions of the United States Supreme Court on that precise point and with the dictates of reason in the definition of the scope and application of this constitutional guarantee.

A constitutional protection must be discernibly available, in the abstract, to all the people who have need for it. The rule set forth in the cases cited by the majority has the effect of making the protection of the guarantee against double jeopardy available *only* to those who (1) secure transcripts of their trials, or (2) pursue appeals from the judgments resulting from their trials, in cases where the language of the indictment itself is not sufficiently specific to show that a subsequent charge is identical to (or different than) the earlier one. This makes the guarantee a constricted and otiose protection. Those without the elucidation afforded by a transcript or appellate opinion are denied the protection.

This narrowing of the scope of this right is manifestly not intended by the Constitution and has never been sanctioned by the United States Supreme Court. That Court has consistently been at pains to require that the indictment must be sufficiently precise in identifying the crime charged that the indictment itself will be a guard against a subsequent trial on the same charge. *United States v. Hess*, 124 U.S. 483, 8 S.Ct. 571, 31 L.Ed. 516 (1887); *Evans v. United States*, 153 U.S. 584, 14 S.Ct. 934, 38 L.Ed. 830 (1893); *Batchelor v. United States*, 156 U.S. 426, 429, 15 S.Ct. 446, 447, 39 L.Ed. 478 (1895); *Hagner v. United States*, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861 (1932); *United States v. Debrow*, 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92 (1953). The idea that parts of the record other than the indictment may be relied upon to provide sufficient protection against double jeopardy as set forth in the *Nappi* and *Kimball* cases, no doubt arises out of the

reference to "the record" in *dicta* in the *Hagner* and *Debrow* cases. The inference that the reference permits resort to portions of the record *other than the indictment* for that purpose is, however, unjustified in view of the very specific insistence in the prior cases that *the indictment* be so specific as, by itself, to guard against subsequent prosecution for the same offense. These cases and a reading of the full context of the references in *Hagner* and *Debrow* demonstrate that the emphasis in those latter cases is upon the specificity of the indictment *as the part of the record* serving as the protective device preventing a second trial. That is, that the record, of whatever else it may consist, will prevent a second trial for the same offense because a properly drawn indictment is included in it. That this is the proper construction of the Court's intent is made manifest from its most recent comment on the subject:

> The precise manner in which an indictment is drawn cannot be ignored, because the important function *of the indictment* is *to ensure that,* "in case any other proceedings are taken against [the defendant] for a similar offence, . . . the record [will] show with accuracy *to what extent he may plead a former acquittal or conviction.*"

*Sanabria v. United States,* 437 U.S. 54, 65–66, 98 S.Ct. 2170, 2179–2180, 57 L.Ed.2d 43, 55 (1978) (quoting *Cochran v. United States,* 157 U.S. 286, 290, 15 S.Ct. 628, 630, 39 L.Ed. 704 (1895); citing *Russell* and *Hagner*) (emphasis added). There is, in none of these cases, any holding that where the indictment is not sufficient to prevent another prosecution the defect can be supplied by other parts of the record. At no point is any sanction given to reliance upon an appellate opinion to remedy the defect in the indictment.

The indication in the majority opinion that the Court has *held* that reliance on other parts of the record than the indictment is permissible to avoid a fatal double jeopardy impact by an otherwise deficient indictment is belied by a close reading of the cases cited for that proposition by the majority. In *Russell v. United States,* 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), the comment referred to (Majority opinion at 1377) is clearly *dicta.* The Court's holding there was that the indictments were defective because "they failed to sufficiently apprise the defendant 'of what he must be prepared to meet.'" *Id.* at 764, 82 S.Ct. 1047, 8 L.Ed.2d 251. On the issue of insufficiency to meet double jeopardy requirements, the Court said:

> Since the indictments set out not only the times and places of the hearings at which the Petitioners refused to testify, but also specified the precise questions which they then and there refused to answer, it can hardly be doubted that the Petitioners would be fully protected from being put in jeopardy for the same offense. . . .

*Id.* Thus, the holding of *Russell* is (1) that the indictments are insufficient because they do not apprise the defendant of the charge to be met at trial, and (2) that the indictments contain sufficient detail, *on their face,* to prevent subsequent jeopardy for the same charge.[1] The Court's reference to use of the record in case of further proceedings is the clearest kind of unnecessary "make-weight" *dicta.* Further, the use of the record is thus premised upon that very consideration (e. g. that the record contains *an indictment* sufficient to identify the previous charge with that degree of specificity which will prevent double jeopar-

---

1. It should be recalled that the charge in *Russell* was a unique, statutorily defined crime (e. g. refusal to answer questions pertinent to the question under inquiry, before a congressional subcommittee). The Court said in this regard: ". . . [T]he very core of criminality under [the statute] is pertinency to the subject under inquiry of the questions which the defendant refused to answer. What the subject actually was, therefore, is central to every prosecution under the statute." *Russell v. United States,* 369 U.S. 764, 82 S.Ct. 1047, 8 L.Ed.2d 251. It was on this point that the Court was concerned to determine if the indictment was sufficient to apprise the defendant of the charge to be faced at trial. By specifying the time, place, occasion and the questions the defendant was alleged to have refused to answer, the indictment provided protection against subsequent prosecution for the same offense.

dy). With that as a premise, it cannot be said that *Russell* holds that parts of the record other than the indictment may be relied upon to avoid potential double jeopardy consequences in the absence of an indictment sufficient for that purpose.

The same is true in the case of *United States v. Haas,* 583 F.2d 216 (5th Cir. 1968). There, the Court *holds*:

> The indictment does contain the basic facts necessary to apprise the defendant of the charge *and to prevent double jeopardy.*

*Id.* at 221. (emphasis added). That being the case, *the record* would obviously be available to protect against double jeopardy in the event of further prosecution; but only because a sufficient indictment is a part of that record.

The Court's remaining authority, *Bartell v. United States,* 227 U.S. 427, 33 S.Ct. 383, 57 L.Ed. 583 (1913), is clearly distinguishable from the present case. The prosecution there was for the offense of depositing an obscene letter in the Federal mails. The indictment set out all of the details of the letter and its deposit (e. g. the date and place of mailing, the addressee of the letter, and the addressee's address), but omitted to describe the obscene content of the letter on the basis that it was:

> . . . too filthy, obscene, lewd, offensive and of such indecent character as to be unfit to be set forth in this indictment and to be spread at length upon the records of this Honorable Court.

*Id.* at 430. The court relied in its opinion in that case upon a rule of pleading that allowed obscene matter to:

> be identified by a reference sufficient to advise the accused of the letter or document intended without setting forth its contents. *United States v. Bennett,* 16 Blatchf. 338, Federal Cases, vol. 24, p. 1093, No. 14, 571; *Rosen v. United States,* 161 U.S. 29 [16 S.Ct. 434, 40 L.Ed.2d 606].

*Id.* at 431. In such case, *the indictment* was sufficient to guard against double jeopardy, even though the obscene content was not set forth in detail. The Court's acceptance of the exception, under a rule of pleading, did not prevent the indictment from being sufficiently precise to meet double jeopardy requirements. The antique sensitivity of such a holding casts, in my view, fatal doubt upon the vitality of that 1913 decision as a predicate for the determination of the scope of a right of constitutional significance under modern conditions and contemporary mores.[2]

At no point is any sanction given to reliance upon an appellate opinion to remedy the defect in the indictment. Were this valid doctrine, one who appealed would always gain the benefit of the protection, post-conviction, because the court can always correct the deficiency in the indictment simply because of the appeal. On the other hand, one who does not, or cannot appeal would always be subject to a second trial, and in the absence of the corrective appellate opinion, nothing would prevent it. Thus, in all cases, the protection is rendered nugatory. I cannot believe that such a result is contemplated, or that it would be condoned, by the United States Supreme Court.

I would reverse this conviction.

**2.** The majority is apparently concerned enough about the possibility of an inadequate protection against double jeopardy arising from its decision today to take comfort from its own assessment that any further prosecution in this case is an "unlikely event." (Majority opinion at p. 1377).

The valid rendition of such an assessment by this Court, or any appellate court, is as impossible as it is irrelevant. It is impossible because the Court has no evidentiary matrix upon which to make an informed judgment on such an issue, even were it proper for it to undertake to do so. It is irrelevant because, even assuming the assessment to be valid, a constitutional right cannot, in reason, be made to depend upon the whim of the prosecutor. If the defendant has a constitutional right against double jeopardy we should say so. Whether or not he may actually need to claim the benefit of that right in the aftermath of this case should properly play no role in determining whether that right exists and is violated on the facts of this case.