In this action, the plaintiff, an association consisting of members of the Jewish faith, seeks injunctive relief to restrain the defendant from using a certain gate in connection with burials in the defendant's cemetery.
The defendant, a nonstock corporation, was incorporated in 1929 for the purpose of establishing, operating, and maintaining a cemetery in the towns of New Haven and Hamden. In October, 1956, the defendant, by an act of its board of directors, adopted rules and regulations for the operation of a nonsectarian cemetery located in the city of New Haven and bounded by Fitch Street, Pine Rock Boulevard and Wintergreen Avenue. Again, in October, 1964, these rules and regulations were amended. On November 28, 1956, the plaintiff entered into an agreement with the defendant to purchase a block of 220 graves in section L for $16,280. In this contract, it was specifically stated that the sale was subject to the rules and regulations governing Beaverdale Memorial Park and upon payment of the purchase price in full an owner's certificate conveying burial rights only would be issued. The burial site would be 72 feet by 90 feet and would be bordered by Wintergreen Avenue on the west. Except for Sunday burials, the defendant would furnish all services, such as grave openings and closings, chairs, tents and other equipment, for a certain fee. Upon full payment, a certificate of ownership was issued on October 26, 1959. A similar contract was *Page 294 
entered into between the same parties on April 14, 1964, for the purchase of a block of 100 graves in section L under substantially the same terms and conditions, and, upon payment in full, a certificate of ownership was issued on April 22, 1968.
Between June, 1962, and the present time, the plaintiff has conducted twenty-two burials on the subject premises. The Beaverdale Memorial Park has two main entrances to the cemetery grounds, namely, the Fitch Street entrance and the Pine rock (formerly Fowler) Boulevard entrance. Prior to the purchase of the grave sites by the plaintiff in 1959, the defendant had planted a row of hedges around the outer perimeter of the cemetery and, in particular, on Wintergreen Avenue, adjoining the plaintiff's site. For the first twelve funerals and burials conducted by the plaintiff, the funeral procession was parked on Wintergreen Avenue and entrance to the cemetery was gained by walking through the hedge. The plaintiff members chose not to enter the cemetery through either the Fitch or the Pine Rock entrances. In June, 1969, for some reason, namely, to prevent any unauthorized entrance to the cemetery from Wintergreen Avenue, the defendant caused a fence to be erected on the Wintergreen Avenue side of the cemetery and alongside the plaintiff's plot. This action prevented further funerals from being held on Wintergreen Avenue. The plaintiff attempted to circumvent this problem by installing an iron gate in the fence, but this act was thwarted by the insertion of a padlock on the gate by the defendant. Since the erection of the fence in 1969, the plaintiff has been forced to conduct its funerals inside the cemetery grounds. This has caused the plaintiff much inconvenience because the funeral procession has been forced to travel a much greater distance to the actual grave site. The plaintiff claims that it is against the religious *Page 295 
belief of its members to walk over graves. The court finds, however, that there is a three-foot path on the north under which there is a water pipe and under which no graves will ever be allowed. Again, this particular route is approximately 160 feet longer than the entrance from Wintergreen Avenue.
According to the rules and regulations adopted by the defendant in October, 1956, the purchasers of lots acquire simply the right and privilege of burial of the dead; the general care of the cemetery is provided by the defendant; and funeral processions upon entering the park are under the control and subject, at all times, to the directions of the superintendent of the cemetery.
With respect to the establishment and operation of cemeteries, the state is concerned because of the effect on the health, welfare, and comfort of its people. It is common knowledge that many people become emotionally upset upon the death of their beloved ones and, during this period of bereavement, have peculiar and unique ideas concerning the establishment and maintenance of grave sites in cemeteries. these ideas may and could prove offensive to others whose dear ones lie in close proximity. The state, in its wisdom, has enacted chapter 339 of the General Statutes, which is the authority for the ownership, establishment, operation and management of cemeteries. Section 19-146 provides that "[c]emeteries may be acquired, owned and managed and controlled by . . . towns and ecclesiastical societies, and by cemetery associations . . . and by no other persons, firms or corporations." Section 19-147 provides the manner in which cemeteries shall be organized, namely, as nonstock corporations, and that they shall not be conducted for the purposes of speculation or for private gain. Section 19-148 is the authority for cemetery associations to "enact bylaws *Page 296 
providing for the care and management of all burial lots, and the protection of all shrubs, trees, fences and monuments thereon."
Section 19-148 is the authority for the defendant's enactment of its rules and regulations in 1956 and 1964. Under these rules and regulations, the defendant assumed unto itself the general care of the cemetery. This power includes the right to erect a fence to protect its property, the right to plant shrubs and trees and to erect fences to add to the aesthetic appeal, and the right to maintain adequate and suitable entrances for the orderly ingress and egress to and from the cemetery grounds, with respect to both the conduct of funeral ceremonies and visitations to the cemetery. In the proper performance of their duty to provide and maintain burial places, cemetery associations have the right to regulate the use of burial places not only for the protection of the public health but also to keep and maintain the condition and appearance of the entire cemetery grounds, including the burial lots, which are generally demanded by public sentiment and taste. State v.Scoville, 78 Conn. 90, 93.
"Generally, one receiving from a cemetery association a deed of a burial lot does not thereby take a title to the soil itself. The rights of burial are so far public, that the private interests so acquired, to a limited use of particular lots for purposes of interment, are subject to the reasonable police regulations of the association having charge of the cemetery." Id., 94.
The plaintiff, in acquiring the plots in Beaverdale Memorial Park, has acquired only such a limited right to the use of them and has consented to the proper regulations, by the association, for the use of the burial plots, by entering into both contracts and by accepting both certificates of ownership, *Page 297 
which expressly provide that the plot owners "are entitled to the use of said Burial Estate forever, for the purpose of sepulture only, subject to the conditions and with the privileges contained in the Bylaws, Rules and Regulations that are now, or may be hereafter adopted."
The plaintiff offered evidence to the effect that it was contrary to Jewish law to walk over graves and, therefore, of necessity the plaintiff must use an entrance from Wintergreen Avenue. This claim carries little weight with the court. Because of the closeness of graves, it is hard to visualize that there will be no occasion for persons to walk over graves if entrance was had from Wintergreen Avenue. It would appear that there is the same opportunity to walk over graves, whether entrance takes place from Wintergreen Avenue or inside the cemetery, particularly in the winter season when graves are covered with snow. The important reason to enter from Wintergreen Avenue is the fact that it would be closer to the grave site and would require less travel on the part of persons attending a funeral.
For the reasons above stated, the issues are found for the defendant on the complaint and for the plaintiff on the counterclaim, in view of the fact that the defendant did not prove its allegations by a fair preponderance of the evidence.
 Judgment may enter for the defendant on the complaint and for the plaintiff on the counterclaim.