**STATE of Maine**

v.

**Frederick TISE.**

Supreme Judicial Court of Maine.

Nov. 16, 1971.

Foahd Saliem, County Atty., Oakland, for plaintiff.

Locke, Campbell & Chapman, by Harry N. Starbranch, Augusta, for defendant.

1. "No person, for the same offence, shall be twice put in jeopardy of life or limb."

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

WEATHERBEE, Justice.

The sole issue presented by this appeal is whether an administrative punishment imposed for an escape upon a prisoner in a county jail is a constitutional bar to subsequent prosecution for the same escape. We hold that it is not.

On May 4, 1970, Defendant escaped from Kennebec County Jail where he was being lawfully detained. He was apprehended, returned to the jail on May 5, 1970 and locked in a cell in solitary confinement on the order of the Sheriff who said to him (according to Defendant's affidavit executed 24 days later), " 'You are locked up for escape. You have to be punished so the other inmates can see that you are locked up and they won't try to escape', or words to that effect." The Defendant was indicted for the escape and on June 1, 1970 he moved that the indictment be dismissed contending that he had already been punished for the escape by undergoing solitary confinement and that Article I, Section 8 of the Constitution of Maine [1] and the Fifth Amendment of the Constitution of the United States [2] bar the State from further prosecution.

The Presiding Justice denied Defendant's motion. Defendant was adjudged guilty of escape in the trial which followed and he now presents this issue to us on appeal.

Petitioner's counsel admits frankly that existing decisional law overwhelmingly holds that criminal prosecution for escape is not barred by prior administrative punishment within the prison for the escape. Our own research leads us to the same conclusion. In the Federal Courts

2. " * * * [N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb; * * * "

the rule in the Fourth Circuit was tersely stated to be:

"Criminal prosecution for the crime of escape is not prohibited under the double jeopardy clause of the fifth amendment because a convict guilty thereof has upon his recapture been subjected to discipline by the prison authorities for the violation of prison discipline involved." Patterson v. United States, 183 F.2d 327 (4th Cir. 1950) cert. denied, 340 U.S. 893, 71 S.Ct. 200, 95 L.Ed. 647.

This view was adopted without further comment by the Fifth Circuit in Mullican v. United States, 252 F.2d 398 (5th Cir. 1958). We find unanimity in the other State and Federal Court decisions on this issue. United States v. Apker, 419 F.2d 388 (9th Cir. 1969); State v. Mead, 130 Conn. 106, 32 A.2d 273 (1943); State v. Cahill, 196 Iowa 486, 194 N.W. 191 (1923); Pagliaro v. Cox, 143 F.2d 900 (8th Cir. 1944); People v. Huntley, 112 Mich. 569, 71 N.W. 178 (1897); Yager v. Commonwealth, Ky., 407 S.W.2d 413 (1966); State v. Shoemaker, 273 N.C. 475, 160 S.E.2d 281 (1968); People v. Ford, 175 Cal.App.2d 37, 345 P.2d 354 (1959); State of Vermont v. Lebo, Vt., 282 A.2d 804, (Opinion dated October 5, 1971).

Defendant directs to our attention Inhabitants of Saco v. Wentworth, 37 Me. 165 (1853). There the Defendant had been convicted in the Municipal Court for unlawfully selling liquor. A statute then in effect allowed him an appeal only upon his giving to the municipality a bond for $200 conditioned upon his not violating any of the provisions of the Act during the pendency of his appeal. He gave the bond and later violated the Act and was sued on the bond. The Defendant contended that the right to appeal was necessarily absolute because it necessarily flowed from the right to trial by jury and that the statute which added a condition to that right was thus a violation of Art. I, § 6 of the Constitution of Maine. The Court announced that this particular issue was the only one

it proposed to examine, discussed the issue at length and concluded that the statute was in fact an infringement upon the right of trial by jury. The Court then went on to remark that if the City was permitted to recover on the bond, this would present no constitutional barrier to a later criminal prosecution by the State for the sale which had constituted the violation of the conditions of the bond—a situation which the Court appeared to deplore as a violation of the spirit although not the letter of the prohibition against double jeopardy. We do not find that *Saco* gives any support to the Defendant's position here.

■ We consider that the purpose of the constitutional interdiction against double jeopardy was aimed to prevent double punishment by *judicial* action. Jeopardy begins, we said in State v. Slorah (a felony case), 118 Me. 203, 106 A. 768 (1919), when a Defendant is put on trial before a court of competent jurisdiction, upon an indictment sufficient in form and substance to sustain a conviction and the jury has been charged with his deliverance. State v. Shannon, 136 Me. 127, 3 A.2d 899, 120 A.L.R. 1166; State v. Boynton, 143 Me. 313, 62 A.2d 182 (1948). While the precise question has never been before us, we find no suggestion in our decisions or our statutes that disciplinary action by an institutional authority should constitute a former jeopardy.

In Weeks v. State, Me., 267 A.2d 641 (1970) we recognized that the constitutional provision against double jeopardy is designed as much to prevent the criminal from being twice punished for the same offense as from being twice tried for it. However, the prior punishment of which we were then speaking was one which had been imposed by a Court of competent jurisdiction acting upon a valid indictment and as a result of a voidable judgment which had later been set aside.

Although conceding the state of the decisional law, the Defendant urges us that it is fundamentally unfair that the State

▮▮▮▮▮▮▮▮▮▮

should be permitted to punish for an escape after the prisoner has already received disciplinary punishment for the same offense. The State, he contends, should be required to elect whether a violation of law by a prisoner should be punished administratively or judicially.

▮ We know of no other jurisdiction which has required such a choice and we do not consider that basic justice or policy considerations demand it here. The authority to impose reasonable disciplinary sanctions—although specifically authorized by statute only in relation to inmates in our State Prison—is inherent in the powers and duties of those who have the responsibilities for administering our penal and correctional institutions.[3] The responsibility for inflicting summary punishment is a grave one but it is easily recognized as a necessary adjunct to order and discipline in these institutions the special conditions of which may require more prompt deterrent effects than can be obtained by the judicial process. For some infractions—such as escape—the separate policy considerations of internal order and the public interest may necessitate the imposition of both administrative and judicial sanctions.[4]

Appeal denied.

3. "Solitary confinement, as a punishment for the violation of the rules of the State Prison, shall be inflicted upon the convict in a cell and he shall be fed on bread and water only, unless the physician certifies to the warden that the health of such convict requires other diet." 34 M.R.S.A. § 711.

4. We realize that solitary confinement and segregation may be appropriate for other purposes than punishment but the language of the Defendant's affidavits—which were not disputed by the State and so are taken as true—limit the issue here to confinement for the purposes of punishment.

3. **Cemeteries** ⊙═5