STATE of Minnesota, Respondent,

v.

Forrest Wayne KJELDAHL, Appellant.

No. 47902.

Supreme Court of Minnesota.

March 23, 1979.

C. Paul Jones, Public Defender, and Phebe S. Haugen, Spec. Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Robert W. Johnson, Anoka County Atty., and Edwin M. Wistrand, Asst. County Atty., Anoka, for respondent.

Heard before TODD, YETKA, and SCOTT, JJ., and considered and decided by the court en banc.

SCOTT, Justice.

This is an appeal from a judgment of conviction entered by the Anoka County District Court finding defendant guilty of escape, Minn.St. 609.485.  We affirm.

On September 13, 1976, Forrest Wayne Kjeldahl (defendant) was in lawful custody at the Minnesota Metropolitan Training Center [1] (MMTC) at Lino Lakes, Minnesota, pursuant to a burglary conviction. MMTC is a minimum security facility in a rural area of Anoka County. At the end of August defendant had been transferred to MMTC from the State Reformatory at St. Cloud, Minnesota, to participate in a drug treatment program. Upon his arrival at the facility, defendant received a copy of the institution's rules and regulations. These rules, which prohibit escape and provide that it can be punished by time in segregation or expulsion from MMTC, were read by defendant.

On September 13, 1976, defendant cleaned out the trunks of state-owned automobiles in preparation for a public auction of the vehicles. Defendant claims he found a bag of "dope" in the trunk of one of the vehicles. At approximately 7:30 that evening, defendant signed out from his cottage, telling the counselor on duty that he was going to walk around the MMTC grounds. Instead, he walked away from the MMTC and made his way to Minneapolis. He was arrested two days later in downtown Minneapolis, asleep in an illegally parked car on Hennepin Avenue. At trial, defendant claimed that he had "snorted" some of the narcotics he had found and had no recollection of the events from the time he signed out of his cottage until he awoke in the Hennepin County Jail. This is the only evidence that defendant was intoxicated when he left MMTC other than his own statements. James Parks, the counselor on duty the night defendant left MMTC, testified that he did not notice anything unusual about the defendant when he signed out of the cottage.

Following his arrest and detention in the Hennepin County Jail, defendant was interviewed by Mr. Brunner of the MMTC. During the course of this interview defendant signed an agreement waiving his right to a hearing and accepting expulsion from MMTC as the "full penalty" for his violation of the MMTC escape rule. Defendant testified at trial that Mr. Brunner informed him that, " * * * it was a complete punishment and that I wouldn't be tried again for it." Mr. Brunner was hospitalized at the time of defendant's trial on the escape charge and, consequently, was unable to testify regarding the conversations he had with defendant when the agreement was signed. Mr. Glyn, the discipline officer at MMTC, though, testified that it was standard procedure to explain to the inmate at the time of the signing that the agreement was binding only between the prisoner and the MMTC and had no bearing on any criminal charges which could be brought by the state.[2]

Defendant was returned to St. Cloud Reformatory to serve the remainder of his sentence. Four months later, he was charged with the crime of escape, pursuant to Minn.St. 609.485. The case was tried to the court without a jury. Following a 1-day trial, defendant was found guilty and committed to the Commissioner of Corrections.[3]

The following issues are presented by this appeal:

(1) Is a criminal prosecution for escape barred by the prior imposition of administrative discipline by prison authorities?

(2) Is specific intent to leave lawful custody with the purpose of avoiding confinement an essential element of the crime of escape?

---

**1.** Minnesota Metropolitan Training Center has since been renamed "Minnesota Corrections Facility—Lino Lakes." L.1978, c. 793, § 69.

**2.** This standard procedure has been incorporated into the agreement which now expressly provides, in part, as follows: "This agreement is binding for M.M.T.C. and the above resident only and shall have no effect on criminal charges that might be initiated by any other authority." We recommend, however, that in addition to this written explanation prison officials continue to orally advise inmates that, consistent with the conclusion reached herein, the prison disciplinary procedure is not a bar to subsequent criminal prosecution by the state.

**3.** The maximum penalty for this offense is five years in prison and/or a $5,000 fine. Minn.St. 609.485, subd. 4(1).

1. Defendant's first claim is that the combination of administrative discipline and criminal conviction constitutes double jeopardy in violation of the state [4] and federal [5] constitutions. Although new to this state, this precise issue has been litigated a number of times in other jurisdictions. Almost without exception, these other courts have held that a federal or state charge for escape is not barred by the prior imposition of administrative discipline by prison authorities. See, e. g., *United States v. Williamson*, 469 F.2d 88 (5 Cir. 1972); *Hutchison v. United States*, 450 F.2d 930 (10 Cir. 1971); *Alex v. State*, 484 P.2d 677 (Alaska, 1971); *State v. Tise*, 283 A.2d 666 (Me. 1971); *Commonwealth v. Sneed*, 322 N.E.2d 435 (Mass.App.1975); *State v. Maddox*, 190 Neb. 361, 208 N.W.2d 274 (1973); *State v. Weekley*, S.D., 240 N.W.2d 80 (1976). We agree with these cases and hold that the double jeopardy clause does not bar prosecution of defendant.

The purpose of the prohibition of double jeopardy is to protect the individual from being subjected to a second trial for the same offense. *State v. McDonald*, 298 Minn. 449, 215 N.W.2d 607 (1974); *State v. Thompson*, 241 Minn. 59, 62 N.W.2d 512 (1954). A criminal trial imposes great psychological, physical and financial burdens on the defendant, and the double jeopardy clause guarantees that he experience these burdens only once "for the same offense." *Breed v. Jones*, 421 U.S. 519, 529, 95 S.Ct. 1779, 1786, 44 L.Ed.2d 346, 355 (1975).[6] Prison inmates may, of course, experience some pressures as a result of the prison discipline process, but these pressures are of a much lesser degree than those incident to a full criminal prosecution. As stated in the well-reasoned opinion of *State v. Weekley, supra*:

"* * * Although it may very well be true that appellant and others similarly situated experience some anxiety and insecurity by virtue of being subjected to administrative discipline by penitentiary authorities, it would trivialize the protection afforded by the double jeopardy clause of the state and federal constitutions to hold that it applies in this case to bar prosecution on a state charge of escape. * * *.

"In summary, then, we conclude that in the light of the principles set forth by the United States Supreme Court in *Breed v. Jones*, supra, the proceedings before the penitentiary disciplinary board and the administrative sanctions imposed by the board upon appellant are not sufficiently analogous to the subsequent criminal proceedings brought against appellant on the charge of escape and the resulting sentence imposed thereon to warrant a holding that appellant was subjected to jeopardy within the meaning of the state and federal constitution when he was charged with and found guilty of being absent from count." S.D., 240 N.W.2d 82.

Moreover, the only administrative sanction imposed on defendant was to remove him from an open facility and return him to the secure facility at St. Cloud. Thus, not only would application of the double jeopardy clause "trivialize" the protections of this constitutional guarantee, but it would com-

---

4. Minn.Const. art. 1, § 7, provides in part: "No person * * * for the same offense shall be put twice in jeopardy of punishment * * *."

5. U.S.Const. Amend. V provides in part: "No person shall * * * be subject for the same offence to be twice put in jeopardy of life or limb." In *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), the United States Supreme Court made the Fifth Amendment guarantee against double jeopardy applicable to the states via the Fourteenth Amendment. Therefore, federal standards and decisions in this area are controlling in the instant case.

6. Or, as is succinctly stated in *Green v. United States*, 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199, 204 (1975): "The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."

pletely frustrate the prison's capacity to deal with escapes from minimum security facilities.

██ Similarly, we are not persuaded by defendant's claim that this combination of prison discipline and criminal trial violates the prohibition against serialized prosecutions embodied in Minn.St. 609.035.[7] A prison disciplinary proceeding is not a "prosecution." *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935, 951 (1974). Rather, it is an administrative proceeding designed to maintain an orderly institution. See, e. g., *State v. Tise, supra*, 283 A.2d 668; *State v. Weekley, supra*, 240 N.W.2d 82. Thus, the statute has no application to these facts.

██ 2. At trial defendant stipulated that he left MMTC without the consent or permission of the appropriate authorities. As a defense to the escape charge he claims he was intoxicated when he left MMTC and remained so until his arrest. Recognizing that voluntary intoxication is a valid "defense" only if specific intent is an essential element of the crime in question,[8] defendant's second claim on appeal is that the crime of escape requires a specific intent to leave custody with the purpose of avoiding confinement.

██ It has long been settled that the legislature may forbid the doing of an act and make its commission a crime without regard to the intention or motive of the actor. *State v. Reps*, 302 Minn. 38, 46, 223 N.W.2d 780, 786 (1974). Such is the case with the offense of escape. Minn.St. 609.-485 provides in part as follows:

> "Subdivision 1. Definition. 'Escape' includes departure without lawful authority and failure to return to custody following temporary leave granted for a specific purpose or limited period.
>
> "Subd. 2. Acts prohibited. Whoever does any of the following may be sentenced as provided in subdivision 4:
>
> "(1) Escapes while held in lawful custody on a charge or conviction of a crime;
> * * * * "

Quite clearly, the statute does not include a requirement of specific intent.[9] Rather, the only intent required to constitute the crime of escape is the intent to do the act which results in the departure from custody. See, *State v. Jones*, 266 Minn. 526, 124 N.W.2d 729 (1963). Such an interpretation of the statute is consistent with the great weight of authority. E. g., *Alex v. State*, 484 P.2d 677 (Alaska 1971); *State v. Marks*, 92 Idaho

7. Minn.St. 609.035 provides: "Except as provided in section 609.585, if a person's conduct constitutes more than one offense under the laws of this state he may be punished for only one of such offenses and a conviction or acquittal of any one of them is a bar to prosecution for any other of them. All such offenses may be included in one prosecution which shall be stated in separate counts."

8. Minn.St. 609.075 provides: "An act committed while in a state of voluntary intoxication is not less criminal by reason thereof, but when a particular intent or other state of mind is a necessary element to constitute a particular crime, the fact of intoxication may be taken into consideration in determining such intent or state of mind."

In explaining the application of this statute, this court has recently held: "The general rule in Minnesota is that voluntary intoxication is a defense to a criminal charge other than drunkenness only if a specific intent or purpose is an essential element of the crime charged and the trier of fact concluded that the defendant's intoxication deprived him of the specific intent or purpose requisite to the alleged offense * * *."

State, *City of Minneapolis v. Altimus*, 306 Minn. 462, 466, 238 N.W.2d 851, 854 (1976).

9. Support for our reading of the statute is found in 10 Minnesota Practice, Jury Instruction Guide, Crim.Jig. 24.02. Therein, the elements of the offense of escape are delineated as follows:

"The elements of escape from custody in this case are:

"First, defendant must have been held (under arrest) (under confinement in _____) on a charge or conviction of a (felony) (gross misdemeanor) (misdemeanor).

"Second, defendant must have escaped while in such custody. Escape includes (departure without lawful authority) (failure to return to custody following temporary leave).

"Third, defendant's act must have taken place on (or about) _____ in _____ County."

The drafters made no mention of specific intent such as they did in the definitions of crimes where it is clearly an essential element. See, e. g., Crim.Jig. 13.02 (assault); Crim.Jig. 16.02 (theft).

368, 442 P.2d 778 (1968). See, generally, 3 Anderson, Wharton's Criminal Law and Procedure, § 1372; Perkins, Criminal Law, p. 504. We therefore reject defendant's contention and hold that specific intent is not an essential element of the crime of escape.[10]

Affirmed.

---

10. In light of our holding that specific intent is not an essential element of the crime of escape, Minn.St. 609.485, we need not reach defendant's claim that his alleged intoxication pre-vented him from forming the intent to leave custody with the purpose of avoiding confinement. See, n. 7, *supra*.