## 21211

Allen Carrol PRUITT, Respondent, v. STATE of South Carolina; William D. Leeke, as Commissioner of the South Carolina Department of Corrections; Jessie W. Strickland, as Director, Division of Regional Operations, South Carolina Department of Corrections; J. R. Martin, as Warden of the Central Correctional Institution; C. G. Graham, as Warden of the Maximum Security Center and W. E. Joyner, as Chief Correctional Supervisor, Appellants.

(266 S. E. (2d) 779)

*Atty. Gen. Daniel R. McLeod* and *Deputy Atty. Gen. Emmet H. Clair* and *Larry C. Batson, Legal Advisor* and *Gerald F. Smith, Asst. Legal Advisor, S. C. Dept. of Corrections,* Columbia, *for appellants.*

*Charles E. Baker* and *Dallas D. Ball,* Columbia, *for respondent.*

April 30, 1980.

*Per Curiam:*

The state and officials of the Department of Corrections appeal from an order vacating and setting aside an administrative finding of guilt and imposition of sentence upon an inmate, respondent Allen Carroll Pruitt, for a major institutional rule violation. We reverse the judgment of the circuit court and reinstate the administrative conviction and sentence.

Respondent is serving a life sentence for murder. While incarcerated in Central Correctional Institution he was charged with throwing a homemade firebomb at a correctional officer in violation of the rules of the *Inmate Guide*[1] published by the Department of Corrections. The disciplinary procedure ran its course and respondent was convicted and sentenced to confinement in the Maximum Security Center for a period of eight years. All administrative appeals were exhausted. Thereafter respondent filed a petition in the Court of Common Pleas for Richland County for relief from the administrative sanctions imposed,[2] which relief was granted.

The appeal presents two questions. First, did the prison officials arbitrarily violate the rules and procedures embodied in the *Inmate Guide* by proceeding against respondent administratively rather than referring the charges to the solicitor? And second, did the prison officials' refusal to administer respondent a polygraph test amount to a denial of due process under the circumstances of this case? We answer both questions in the negative.

From the outset we note our adherence to the traditional "hands off" doctrine regarding judicial involvement in prison disciplinary procedures. *Sellers v. State,* 259 S. C. 564, 193 S. E. (2d) 513 (1972); see 60 Am. Jur. (2d), *Penal and Correctional Institutions,* § 45, The view that internal discipline for inmate infractions is normally best left to the discretion and expertise of prison of-

---

[1] The specific offense was assault on an officer, classified as a major violation of rules under the provisions of the *Inmate Guide.* The internal proceedings against respondent were held pursuant to the procedures set forth in the 1972 Revision of the Guide.

[2] Respondent did not seek judicial review under § 1-23-380 of our recently enacted state administrative procedures act (1976 Code, as amended) which does "not apply to any matters pending on June 13, 1977," as this matter was. Moreover, we note with interest that the Supreme Court of the State of Washington has recently held that the unique nature of prison disciplinary procedures exempts those proceedings from judicial review under the State's administrative procedures act. *Dawson v. Hearing Committee,* 92 Wash. 2d 391, 597 P. 2d 1353 (1979); contra, *Lawrence v. Michigan Department of Corrections,* 88 Mich. App. 167, 276 N. W. (2d) 554 (1979).

ficials is one recognized by statute in this state. See Section 24-3-710, Code of Laws of South Carolina (1976). However, when the infringements complained of by an inmate subject to prison disciplinary action reach constitutional dimensions, the courts are duty bound to intercede. *Wolff v. McDonnell,* 418 U. S. 539, 94 S. Ct. 2963, 41 L. Ed. (2d) 935 (1974); *Sweet v. South Carolina Department of Corrections,* 529 F. (2d) 854 (4th Cir. 1975); see also *Pearson v. Townsend,* 362 F. Supp. 207 (D. S. C. 1973).

Whatever due process protection respondent may assert with regard to the internal disciplinary procedure resulting in his transfer to a maximum security facility arises by virtue of the administrative rules and policies set forth in the *Inmate Guide.*[3] The due process clause of the Fourteenth Amendment does not in and of itself protect respondent from every transfer within the state prison system as a result of his misconduct.[4] *Meachum v. Fano,* 427 U. S. 215, 96 S. Ct. 2532, 49 L. Ed. (2d) 451 (1976); *Montanye v. Haymes,* 427 U. S. 236, 96 S. Ct. 2543, 49 L. Ed. (2d) 466 (1976); see also *Vice v. Harvey,* 458 F. Supp. 1031 (D. S. C. 1978).

The *Inmate* Guide classifies offenses into four categories with various dispositional procedures relevant to each:

## II. DISCIPLINARY PROCEDURES

Violations of institutional and/or departmental rules will be disposed of in one of the following manners, depending upon the seriousness of the violation:

*1. Minor Violations of Nonconformance:*

Corrected by the observing employee.

---

[3] Relief from the procedures followed was recently denied this respondent in United States District Court for the District of South Carolina by order filed September 27, 1978 in Civil Action No. 78-387, *Pruitt v. Leeke, et al.* To the extent that order addressed either of the two issues herein appealed, respondent contends there remain questions as to the procedure's validity under our State Constitution.

[4] An array of protection must be afforded an inmate subjected to involuntary transfer from a state prison to a mental hospital, however. *Vitek v. Jones,* —— U. S. ——, 100 S. Ct. 1254, 63 L. Ed. (2d) 552 (1980).

*2. Minor Violations of Rules:*

Referred and disposed of by the Chief Correctional Supervisor.

*3. Major Violations of Rules:*

Referred to the Adjustment Committee by the Chief Correctional Supervisor.

*4. Major Violations of Laws:*

Referred to County Court by Warden.

The charge against respondent for assault on an officer is classified along with such other offenses as sexual assault upon another inmate, robbery by force, and rioting as a category three major violation of rules. Respondent's contention is that the serious offense with which he was charged is also a category four major violation of laws which, pursuant to the *Inmate Guide,* "may be referred to . . . solicitor for prosecution in General Sessions Court." *Inmate Guide* (Revised 1972), at page 12. Respondent would have us interpret the above provisions of the Guide, as did the lower court, to mandate the referral of such charges to the solicitor rather than allowing prison officials in their discretion to treat the offense as a category three violation and discipline the offender internally. Under respondent's approach, appellants' failure to refer the matter would be an arbitrary violation of the prison's own procedures in contravention of respondent's due process rights.

We refuse to accept this line of reasoning.

Misconduct constituting a direct danger to persons or property, or to the security of the institution, is specifically classified as a category three major violation of rules. While the language *"may* be referred" (emphasis added) employed in the *Inmate Guide* is not conclusive of this issue, see *Moore v. Waters,* 148 S. C. 326, 146 S. E. 92 (1928), it is generally regarded as imparting some discretionary application to the terms of a statute or regulation.

*State v. Wilson,* Opinion No. 21165, Smith's Advance Sheet No. 10 (1980) ; 82 C. J. S. *Statutes* § 380; 1 Am. Jur. (2d), *Administrative Law,* § 46. In our view, neither concern for the public interest nor any individual or constitutional privileges of respondent requires a construction of the *Inmate Guide* that mandates referring major rules violations such as an assault on a correctional officer for criminal prosecution. We read the intent of the provisions of the *Inmate Guide* as reflective of a policy of discretion in choosing between criminal prosecution and administrative procedure, which is harmonious with both statute and policy.

The initiation of criminal process against respondent is certainly not foreclosed by a prior administrative disposition. *U. S. v. Hedges,* 458 F. (2d) 188 (10th Cir. 1972) ; *State v. Kjeldahl, Minn.,* 278 N. W. (2d) 58 (1979) ; 21 Am. Jur. (2d) *Criminal Law,* § 169, at note 4. The assaulted officer, who fortunately was unharmed by the attack, is certainly free to vindicate his rights if he so chooses. However, there is nothing shown here which requires prison officials to defer inmate disciplinary action to the courts.

Appellants also challenge the finding of the lower court that the officials' use of the polygraph in the investigation of the charges against respondent was arbitrary, and under the circumstances of this case amounts to a denial of due process. We agree this finding is unjustified.

There is no question that the use of the polygraph as an investigative aid is purely discretionary with prison officials. *Pruitt v. Leeke, supra* at note 3. The *Inmate Guide* as amended September 18, 1974, provides that : [t]he Warden may, at his discretion, coordinate with the officials at SLED concerning the use of a polygraph (lie detector) as an investigative aid.

Respondent does not contend that this provision in itself required prison officials to offer him the polygraph as he re-

quested,[5] or that respondent had a right to demand a polygraph test purely as an exercise of his constitutional guarantees. He simply argues that the test was used on other inmates during the course of the investigation, and was administered to respondent's chief accuser, another inmate; thus the refusal to allow respondent to take the test was an arbitrary and discriminatory exercise of discretion by prison authorities inconsistent with the concept of due process. We disagree.

The record shows the investigation was conducted in good faith concerning a matter of routine disciplinary action in prison administration which normally is not subject to judicial review. *Sellers v. State, supra; Crowe v. Leeke,* S. C., 259 S. E. (2d) 614 (1979). We find no abuse of discretion here, nor actions by prison authorities which rise to a denial of constitutional rights, state or federal.

Accordingly, the judgment of the lower court is reversed and the administrative conviction and sentence of respondent reinstated.

Reversed.

---

[5] Respondent testified he had refused the polygraph in an earlier and unrelated disciplinary matter after agreeing to take the test and being transferred to SLED Headquarters for that purpose. Prison officials considered respondent's prior action in their instant decision to deny him the polygraph.