Jack L. LOSEE, Appellant,

v.

STATE of Iowa, Appellee.

No. 84–1505.

Supreme Court of Iowa.

Sept. 18, 1985.

Charles L. Harrington, Appellate Defender, and Raymond E. Rogers, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Gordon E. Allen, Sp. Asst. Atty. Gen., and John M. Parmeter, Asst. Atty. Gen., for appellee.

Considered by REYNOLDSON, C.J., and McCORMICK, LARSON, CARTER and WOLLE, JJ.

WOLLE, Justice.

Petitioner, Jack L. Losee, Jr., an inmate at the Iowa State Penitentiary, appeals from the district court's denial of his application for postconviction relief. A penitentiary disciplinary committee found petitioner guilty of planning an escape and disciplined petitioner by imposing one year of administrative segregation and revoking two days of good time he had earned. Petitioner asserts that his right to due process under the fourteenth amendment to the Constitution was violated in two respects: he contends the evidence was insufficient to support the finding that he

planned an escape; and he contends that he was entitled to be given a psychological stress evaluation test (P.S.E.), commonly referred to as a lie detector test. The district court found no merit in either contention and dismissed the application for postconviction relief. We affirm.

On October 27, 1983, petitioner was given a disciplinary notice informing him that "a confidential informant or informants" had advised prison officials that petitioner was planning an escape. On November 2, 1983, a hearing was held before a prison disciplinary committee. The committee received a confidential report concerning the information provided by the informant(s), and it allowed petitioner to testify and present other evidence concerning the incident. The committee found petitioner guilty of the charge, stating in its written findings of fact:

On either 10/11/83 or 10/12/83 inmate Losee asked another inmate if the other inmate wanted to join him in an escape attempt. The purpose of the escape would be to kill witness(es) against inmate Losee.

The informant(s) passed a P.S.E. indicating that the information given to the investigation division was truthful. Informant(s) name(s) cannot be revealed for to review same may jeopardize informant(s).

When petitioner learned at the hearing that P.S.E. testing had been performed on the informant(s), he asked that he be given the same test. The request was denied both by the committee and by the warden, who rejected his administrative appeal. Petitioner then filed his application for postconviction relief under Iowa Code chapter 663A (1983) challenging the committee's decision on fourteenth amendment due process grounds which we here address. The postconviction court dismissed his application following an evidentiary hearing.

▪ Because fundamental constitutional rights are involved, our review is de novo. *Fichtner v. Iowa State Penitentiary*, 285 N.W.2d 751, 752 (Iowa 1979); *State v. Cullison*, 227 N.W.2d 121, 126 (Iowa 1975).

I. *Sufficiency of the Evidence.*

Petitioner contends that the disciplinary committee's finding that he planned to escape was not supported by substantial evidence. In *Wilson v. Farrier*, 372 N.W.2d 499, —— (1985), we decided that the test to be applied in determining the sufficiency of evidence to support prison disciplinary decisions is that recently articulated in *Walpole v. Hill*, —— U.S. ——, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985):

[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board .... This standard is met if 'there was some evidence from which the conclusion of the administrative tribunal could be deduced....' Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

*Id.* at ——, 105 S.Ct. at 2774, 86 L.Ed.2d at 365.

▪ The district court, deciding this case before we decided *Wilson,* applied a somewhat stricter "substantial evidence" test but nevertheless concluded "there was substantial evidence before the committee that [petitioner] planned an escape." We have reviewed the entire record, including its confidential material (examined *in camera*) and agree with the district court's conclusion. Measured either by a "substantial evidence" test or the appropriate "some evidence" test, the evidence in this record is constitutionally sufficient to support the decision of the disciplinary committee.

II. *Petitioner's Request for a P.S.E. Test.*

▪ At the time of the disciplinary committee hearing, petitioner learned that prison officials had given a P.S.E. test to confi-

dential informant(s) and furnished the results of the testing to the committee. Petitioner immediately requested that he too be given a P.S.E. test to bolster his own credibility about what happened. Petitioner does not argue that the disciplinary committee erroneously considered the results of P.S.E. testing administered to other inmates. Rather, the thrust of petitioner's due process contention is that he was entitled to receive the same P.S.E. testing as that given other inmates so his own credibility could be enhanced. We conclude that the refusal to grant his request did not deprive him of due process.

■ To support his position petitioner cites cases requiring the state to provide assistance to indigents in obtaining evidence for use at trial. *See Ake v. Oklahoma,* ‒‒ U.S. ‒‒, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985) (due process requires assistance of a psychiatrist to an indigent criminal defendant at the expense of the State when defendant's sanity is an issue); *Little v. Streater,* 452 U.S. 1, 101 S.Ct. 2202, 68 L.Ed.2d 627 (1981) (due process requires State to provide indigent father in a paternity action with access to blood grouping tests). It is now clear, however, that procedural rules designed for free citizens do not automatically apply to lawfully incarcerated persons, who retain only a narrow range of protected liberty interests while in prison. *Hewitt v. Helms,* 459 U.S. 460, 467, 103 S.Ct. 864, 869, 74 L.Ed.2d 675, 685 (1983); *Wolff v. McDonnell,* 418 U.S. 539, 560, 94 S.Ct. 2963, 2977, 41 L.Ed.2d 935, 953 (1974). The due process afforded a prisoner in disciplinary proceedings must accommodate both the prisoner's right to be treated fairly and the institutional needs and objectives of incarceration. *Wolff,* 418 U.S. at 556, 94 S.Ct. at 2975, 41 L.Ed.2d at 951. The balancing involved is illustrated in two of our recent prison disciplinary cases. *Compare Fichtner v. Iowa State Penitentiary,* 285 N.W.2d 751, 760 (Iowa 1979) (requiring that disciplinary hearing be based on intelligible rules, with decisions setting forth evidence relied on and reasons for discipline inflicted) *with Niday v. State,* 353 N.W.2d 92, 94–95 (Iowa 1984)

(disciplinary committee not required to include in its decision an explanation why it found confidential information credible).

■ This disciplinary proceeding complied with the limited due process requirements delineated in *Wolff.* Petitioner received written notice of the charge against him and a hearing at which he testified and presented evidence. The committee's written decision adequately set forth the committee's findings of fact and disclosed the general nature of the confidential information upon which the committee relied. Prison officials were entitled to exercise discretion not to disclose the identity of the confidential informant(s), in order that the safety of such persons would not be jeopardized. Prison inmates have no due process right to confront and cross examine their accusers. *Wolff,* 418 U.S. at 567–68, 94 S.Ct. at 2980, 41 L.Ed.2d at 957–58.

Petitioner also contends that the State has made no showing of a legitimate financial or security interest for denying him a P.S.E. test. We disagree. Even though prison officials administer P.S.E. tests to informants at the penitentiary and could have given petitioner such a test, the record shows that the type of questioning administered might well disclose the identity of the informant(s). Moreover, the record shows that the committee monthly must process approximately 300 to 400 disciplinary reports. "[I]n identifying the safeguards required by due process, the Court has recognized the legitimate institutional needs of … avoiding burdensome administrative requirements that might be susceptible to manipulation, and preserving the disciplinary process as a means of rehabilitation." *Walpole v. Hill,* ‒‒ U.S. ‒‒, ‒‒, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356, 364 (1985). Given the number of disciplinary incidents and reports which must be processed monthly, a requirement that P.S.E. examinations must be given upon request of each person charged with a violation of prison rules could well be unreasonably burdensome and subject to manipulation by inmates. Such a requirement

would also hamper prompt disposition of disciplinary cases. As this court pointed out in *Fichtner:*

[A] penal institution naturally has numerous disciplinary problems; its population contains many people who have such problems. This means numerous investigations and hearings are necessary each workday. Unless the time of the institution is to be largely given over to investigations and hearings and the other activities of the institution are largely abandoned, the processing of disciplinary cases must be considerably simpler and more expeditious than trials of cases in the courts.

285 N.W.2d at 756.

Cases from other jurisdictions support our conclusion that petitioner had no due process right to a P.S.E. test. In *Pruitt v. State,* 274 S.C. 565, 266 S.E.2d 779, *cert. denied,* 449 U.S. 1036, 101 S.Ct. 613, 66 L.Ed.2d 498 (1980), a polygraph test was given to other inmates, including the disciplined inmate's chief accuser, but the South Carolina Supreme Court held that due process was not denied when prison officials exercised their discretion to refuse the accused's request to take a similar test. *Id.* at 570–71, 266 S.E.2d at 781–82. Two decisions of the Oregon Court of Appeals have applied *Wolff* principles and held that due process does not require the State to grant inmates' requests for a polygraph examination. *See Sandlin v. Oregon Women's Correctional Center,* 28 Or.App. 519, 523–24, 559 P.2d 1308, 1310 (1977); *accord Bishop v. Oregon State Penitentiary,* 35 Or.App. 315, 317–18, 581 P.2d 122, 123–24 (1978). The *Bishop* court noted:

In exercising its discretion to grant or deny a request for a polygraph examination, the committee may properly consider the doubtful validity of polygraph test results, the availability of qualified operators, and equipment, and the time and expense necessary to conduct the test.

*Id.* at 318, 581 P.2d at 124 (citations omitted). *Cf. State v. Conner,* 241 N.W.2d 447, 456–59 (Iowa 1976) (rejecting due process challenge to Iowa rule that unstipulated polygraph evidence is inadmissible; proponent of polygraph evidence failed to make

requisite showing that polygraphy is a field of proper opinion evidence). Petitioner points to dictum in *United States ex rel. Wilson v. DeRobertis,* 508 F.Supp. 360 (N.D.Ill.1981), where the court stated that such procedures as the administering of polygraph examinations "may at times be necessary to ensure fundamental fairness ...." *Id.* at 362. That court, however, cited no supporting authorities and held "clearly without merit" petitioner's contention that he was entitled to an opportunity to exonerate himself in a polygraph examination. *Id.*

We find in the record of this disciplinary proceeding adequate support for the prison officials' refusal to grant petitioner's request for a P.S.E. test, as well as adequate evidence to support the disciplinary committee's decision. Petitioner's due process challenges to the committee's decision are without merit.

AFFIRMED.