STATE of Minnesota, Respondent,

v.

Amwati Pepi McKENZIE, Appellant.

No. C3–95–1258.

Supreme Court of Minnesota.

Jan. 19, 1996.

David Powers, 10th District Assistant Public Defender, Elk River, for appellant.

Nancy Logering, Assistant Sherburne County Attorney, Elk River and Hubert H. Humphrey III, Attorney General, St. Paul, for respondent.

**OPINION**

KEITH, Chief Justice.

This case raises the issue of whether the administrative discipline of a prison inmate, including placement in segregation and loss of good time credit, bars criminal prosecution for the same misconduct under the Double Jeopardy Clauses of the United States and Minnesota Constitutions. Appellant Amwati Pepi McKenzie appeals from a district court decision rejecting his argument that the imposition of prison discipline and subsequent criminal prosecution violated his constitutional right not to be punished twice for the same offense. Because we find that the administrative discipline imposed by the prison was not "punishment" under current double jeopardy jurisprudence, we affirm.

Although the criminal charges at issue here have not yet reached a trial, the facts of McKenzie's case were presented to the district court by stipulation to allow a decision on the legal issues involved. The amended criminal complaint filed in Sherburne County District Court alleges that on September 10, 1994, McKenzie was involved in an assault upon another inmate at the Minnesota Correctional Facility–St. Cloud. At approximately 7:45 p.m., a staff member observed McKenzie in a prison courtyard "throwing closed-fist punches to the face and body" of another inmate. The staff member tried to separate the two inmates, but lost his grip on McKenzie when a third inmate kicked the staff member in the knee. As McKenzie tried to reach the victim again, another staff member grabbed McKenzie by the shirt. McKenzie continued to struggle until reinforcements arrived and successfully restrained him.

When the prison staff searched McKenzie, they discovered a homemade weapon, consisting of a metal combination lock attached to a black comb, in his possession. The victim later told the prison authorities that McKenzie attacked him by trying to hit him with the weapon, but he fended off McKenzie's blows and avoided injury. Several weeks later, staff members at the prison monitored a phone call by McKenzie from the prison in which they heard him describe

the September 10 incident and admit that he had tried to hit the victim in the head with the combination lock.

Immediately following the altercation in the prison courtyard, the prison began disciplinary proceedings against McKenzie for violations of several provisions of the institution rules. On September 13, 1994, McKenzie agreed to waive his right to a disciplinary hearing and pleaded guilty to possession of contraband, assault and disobeying a direct order. Other charges of rule violations were dismissed, and McKenzie agreed to accept a total of 300 days in segregation. He was informed that he would not earn statutory good time credit for the days he spent in the segregation unit.[1]

As a result of the assault, the prison's special investigator filed criminal charges against McKenzie for possession of contraband, felony assault and disorderly conduct. McKenzie sought dismissal of the criminal complaint on double jeopardy grounds, and an omnibus hearing was held in Sherburne County District Court on June 1, 1995. The district court denied McKenzie's motion to dismiss the charges, holding that the administrative proceedings in the prison were remedial in nature, and therefore did not bar the criminal prosecution of McKenzie. The district court then stayed further proceedings in the matter and certified the double jeopardy issue raised by McKenzie's case to the court of appeals pursuant to Minn. R.Crim.P. 28.03. This court then granted the parties' joint petition for accelerated review.

■ On appeal from the district court's ruling, McKenzie argues that the discipline imposed by the prison as a result of the assault was "punishment" under the Double Jeopardy Clause, and therefore bars any subsequent criminal charges for the same incident. The Double Jeopardy Clause of the United States Constitution mandates that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The federal provision applies to the individual states un-

der the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The Minnesota Constitution offers similar protection to criminal defendants: "[N]o person shall be put twice in jeopardy of punishment for the same offense." Minn. Const. art. I, § 7. *See State v. Fuller,* 374 N.W.2d 722, 727 (Minn.1985) (declining to decide whether Minnesota Constitution affords greater double jeopardy protection than federal constitution). Furthermore, the Minnesota legislature has enacted a double jeopardy statute to eliminate multiple prosecutions and punishments: "[I]f a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses and a conviction or acquittal of any one of them is a bar to prosecution for any other of them." Minn.Stat. § 609.035, subd. 1 (1994).

The United States Supreme Court has stated that the Double Jeopardy Clause offers three separate protections: against a subsequent prosecution for the same offense after either an acquittal or a conviction, and against multiple punishments for the same offense. *See North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076–77, 23 L.Ed.2d 656 (1969). In this case, McKenzie argues that the criminal charges brought by the State violate his constitutional and statutory rights to be free from multiple punishments for the same offense. He contends that the State has already "punished" him for his conduct in the prison by placing him in segregation and denying him good time credits. Therefore, the State cannot penalize him again through criminal prosecution. In response, the State asserts that the discipline imposed by the prison authorities was not "punishment," as defined by current caselaw, but was instead a remedial procedure employed by the prison to maintain order and protect other inmates and the prison staff.

■ The question of whether discipline by prison authorities triggers double jeopardy protection and therefore bars subsequent criminal prosecution for the same misconduct

---

**1.** According to his appellate counsel, McKenzie was later transferred to Oak Park Heights, a maximum security correctional facility. However, McKenzie's alleged transfer is undocumented, and therefore not part of the record before this court.

has not been resolved by the Supreme Court. However, numerous federal and state courts have considered this issue over the past 25 years, and the overwhelming majority have rejected such claims by prison inmates.[2] This court has ruled that prison discipline is not a "prosecution" under the Double Jeopardy Clause and Minn.Stat. § 609.035, and therefore does not prevent a later criminal trial. *State v. Kjeldahl,* 278 N.W.2d 58, 60–61 (Minn.1979).[3]

Nonetheless, McKenzie asserts that recent Supreme Court decisions, particularly *United States v. Halper,* have changed the face of double jeopardy jurisprudence and have substantially broadened the protection afforded by the constitution in this area. 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). Thus, McKenzie argues that decisions on this issue prior to the release of *Halper* are not controlling, including this court's opinion in *Kjeldahl.*

■ In *Halper,* a unanimous Supreme Court established that the multiple-punishments prong of the Double Jeopardy Clause prevented the federal government from imposing $130,000 in civil penalties against a defendant who already had been criminally prosecuted for the same conduct, namely the submission of $585 in false Medicare claims. 490 U.S. at 451, 109 S.Ct. at 1903. Justice Blackmun's opinion rejected the Court's prior holding in *United States v. Ward,* which focused upon the label pinned to a particular sanction for purposes of assessing whether it was "punishment" under the Constitution. 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980). In *Ward,* the Court placed great weight upon Congress' intent to impose a "civil penalty" upon the defendant, as reflected by the chosen label. *Id.* at 249, 100 S.Ct. at 2641–42. Unless the supposedly civil penalty was so punitive in nature as to negate that intent, its imposition upon an already-prosecuted criminal defendant would not violate double jeopardy protections. *Id.* After *Halper,* however, the labels chosen by a legislative body "are not of paramount importance. It is commonly understood that civil proceedings may advance punitive as well as remedial goals, and, conversely, that both punitive and remedial goals may be served by criminal penalties." 490 U.S. at 447, 109 S.Ct. at 1901.

■ Thus, the *Halper* decision revised the Supreme Court's multiple-punishments test. Now the question of whether a particular civil sanction imposes criminal punishment requires evaluation of "the purposes actually served by the sanction in question, not the underlying nature of the proceeding giving rise to the sanction." *Id.* at 447 n. 7, 109 S.Ct. at 1901 n. 7. Accordingly, a civil sanction wielded against a defendant who already has been punished in a criminal prosecution will violate the Double Jeopardy Clause if "the second sanction *may not fairly be characterized as remedial, but only as a deterrent or retribution." Halper,* 490 U.S. at 448–49, 109 S.Ct. at 1901–02 (emphasis added). Any sanction that *only* serves the goals of deterrence and retribution, and cannot be described as remedial, is "punishment" under *Halper.* In our view, this test permits the imposition of a civil sanction that can be "fairly characterized" as remedial, but also may deter or punish the offender. *See*

**2.** *See, e.g., Kerns v. Parratt,* 672 F.2d 690 (8th Cir.1982); *United States v. Williamson,* 469 F.2d 88 (5th Cir.1972); *Hutchison v. United States,* 450 F.2d 930 (10th Cir.1971); *State v. Killebrew,* 115 Wis.2d 243, 340 N.W.2d 470 (1983); *People v. Martinez,* 656 P.2d 1317 (Colo.1983); *State v. Weekley,* 90 S.D. 192, 240 N.W.2d 80 (1976).

**3.** In *Kjeldahl,* a prison inmate unsuccessfully argued that "the combination of administrative discipline and criminal conviction constitutes double jeopardy." *Kjeldahl,* 278 N.W.2d at 60. Kjeldahl was charged with the crime of escape four months after he walked away from a minimum security facility in Anoka County. After his recapture, Kjeldahl agreed to waive his right to a disciplinary hearing and was transferred to a higher security institution. *Id.* at 59. Kjeldahl later moved to dismiss the criminal escape charges, arguing that the State was subjecting him to a second trial in violation of the Double Jeopardy Clause. This court rejected his argument by concluding that the prison discipline process was not comparable to a criminal trial, and therefore did not trigger double jeopardy protections. *Id.* at 60. Thus, our decision in *Kjeldahl* was based upon the "multiple prosecutions" prong rather than the "multiple punishments" argument raised by McKenzie in this case.

*State v. Hanson,* 543 N.W.2d 84, 87–88 (Minn.1996).

■ McKenzie insists that the sanctions imposed by the prison pursuant to its disciplinary proceedings are not intended to serve remedial goals, but instead seek to punish the offending inmate for his or her behavior and deter future misconduct. As proof of the prison's punitive intent, McKenzie points to the Department of Correction's handbook entitled *Inmate Discipline Regulations.* He cites several locations within the handbook where the terms "penalty" or "punishment" are used to describe disciplinary options. However, as noted above, the labels chosen by the Department of Corrections are not determinative of the character of the sanctions because the Supreme Court requires a case-by-case assessment of the nature of the penalty imposed and its intended purpose. *Halper,* 490 U.S. at 447, 109 S.Ct. at 1901.

McKenzie and the State vehemently disagree over the nature of the sanctions enforced by the prison. McKenzie insists that "being compelled against one's will into segregation for nearly a year, even from a society of convicted felons, is punitive." If the prison intended to use segregation for remedial purposes, McKenzie argues, there would be some mechanism for the inmate's return to the general prison population as soon as segregation was no longer necessary. It is unclear from the record whether such a mechanism exists, or whether McKenzie actually served his entire 300–day term in segregation. The State responds by asserting that discipline is not intended only to punish the offender, but is primarily an effective means of protecting prison staff and other inmates. A range of disciplinary options, argues the State, including isolating the offender in segregation, revoking good time credits and transferring the offender to another prison, is required to maintain order within the prison.

■ We cannot agree with McKenzie that the prison discipline imposed in this case violates the "fairly * * * characterized as

remedial" test established in *Halper.* 490 U.S. at 448–49, 109 S.Ct. at 1901–02. The loss of good time credit and placement of an inmate in segregation are designed to establish institutional order and protect prison staff and fellow inmates from violent or uncooperative prisoners. These are remedial goals, intended to prevent further disruption of prison security, and any punitive effects upon the disciplined inmates are incidental and will not ordinarily equate to a criminal prosecution. *See Kjeldahl,* 278 N.W.2d at 60–61. Segregating an inmate from the general prison population neutralizes the immediate threat of further violence, and allows the prison staff to more effectively investigate any rule violations. Good time credits "are granted to reward good behavior and they are conditioned upon continuing good behavior. The authorities' ability to revoke them is designed to encourage the inmates to continue their good conduct and, thus, is rationally related to the remedial goal." *United States v. Newby,* 11 F.3d 1143, 1145 (3rd Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 111, 130 L.Ed.2d 58 (1994). Furthermore, just as the revocation of probation or parole is regarded as a reinstatement of the original sentence rather than punishment for more recent misconduct, the denial of good time credits relates to the sentence the inmate is currently serving. *See* Minn.Stat. § 244.04 (1994). *See also State v. Randolph,* 316 N.W.2d 508, 510 (Minn.1982) (defendants generally serve a minimum of two-thirds of total sentence in prison if no prison rules are violated, and a maximum of one-third on supervised release). Thus, loss of good time cannot be considered as a second "punishment," since it simply requires the inmate to serve more of the underlying sentence in prison, and does not extend the total period of correctional supervision. *United States v. Brown,* 59 F.3d 102, 105 (9th Cir.1995).

Several federal circuit courts and state appellate courts have applied *Halper* in the context of prison discipline and have unanimously held that no double jeopardy violation occurred.[4] No case could be found to sup-

---

4. *United States v. Hernandez–Fundora,* 58 F.3d 802, 806 (2nd Cir.1995), *cert. denied,* —— U.S. ——, 115 S.Ct. 2288, 132 L.Ed.2d 290 (1995)

("[T]he mere fact that a sanction imposed by prison officials has a punitive component does not mean that the sanction constitutes 'punish-

port McKenzie's argument that the discipline imposed on a prison inmate bars subsequent criminal prosecution for the same conduct.

■ We recognize that other courts have warned that particularly severe punishment for a minor violation of prison rules *could* be so disproportionate to the prison's remedial goals as to trigger double jeopardy. *See United States v. Hernandez–Fundora,* 58 F.3d 802, 807 (2nd Cir.1995), *cert. denied,* —— U.S. ——, 115 S.Ct. 2288, 132 L.Ed.2d 290 (1995) (subsequent prosecutions will only be barred when prison's discipline was "grossly disproportionate" to its remedial interests); *Brown,* 59 F.3d at 105. Such courts have applied *Halper* 's holding to claims of prison inmates by determining whether the actual discipline imposed was out of proportion to the inmate's misconduct and the prison's need to maintain order. McKenzie's case, however, is not representative of the "rare case" where the discipline imposed upon an inmate "is overwhelmingly disproportionate to the damages he has caused." *Halper,* 490 U.S. at 449, 109 S.Ct. at 1902. Three hundred days in segregation and a proportionate loss of good time credit are not overwhelmingly punitive considering the seriousness of McKenzie's misconduct.

In light of the foregoing analysis, we affirm the district court's decision.

Affirmed.

---

ment' for double jeopardy purposes."); *Brown,* 59 F.3d at 105 (prison discipline can be explained "solely in remedial terms" and therefore is not punishment); *Garrity v. Fiedler,* 41 F.3d 1150, 1153 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1420, 131 L.Ed.2d 303 (1995) (concluding that the *Halper* decision was not intended to alter longstanding rule that prison discipline does not violate double jeopardy protections); *United States v. Newby,* 11 F.3d at 1146 (disciplinary sanctions were not so grossly disproportionate to remedial purpose of maintaining order in prison so as to constitute punishment under *Halper*); *State v. Lynch,* 248 Neb. 234, 533 N.W.2d 905, 911 (1995) (adopting reasoning and holding in *Newby*); *Hernandez v. State,* 904 S.W.2d 808 (Tex.Ct.App.1995); *People v. Watson,* 892 P.2d 388 (Colo.Ct.App.1994); *Wild v. Commonwealth,* 18 Va.App. 716, 446 S.E.2d 626 (1994); *State v. Walker,* 35 Conn.App. 431, 646 A.2d 209 (1994).